and on the 6th of October, the chief justice pronounced the ^judgment of the court : Mr. *211] Justice Rush having declined to give any opinion, as he had been of
 
 *223
 
 counsel with the plaintiff in this cause, before he took his seat upon the bench.
 

 McKean, Chief Justice.
 

 Two questions were made
 
 in
 
 this cause : 1st. Whether the defendant, as
 
 assignee
 
 of the lease, is bound by the covenant to repair, as well as the lessee ? And 2d. Whether the special matter pleaded, is sufficient in law to bar the plaintiff ?
 

 With respect
 
 to
 
 the first question, we are clear in our opinion, that the covenant to repair, and to deliver up the demised premises in good order and repair, runs with the land, being annexed and aj>purtenant to the thing demised, and shall bind the assignee as much as the lessee, even if the assignee were not named by express words, on account of the privity ; but in the case at bar, the assignee is bound by
 
 express words,
 
 and
 
 d fortiori,
 
 is answerable as well as the lessee. This point has been fully settled in
 
 Spencer's case,
 
 5 Co. 16 b; and
 
 Grescot
 
 v.
 
 Green,
 
 1 Salk. 199;
 
 Harper
 
 v.
 
 Burgh,
 
 2 Lev. 206; 1 Roll. Abr., tit. Covenant,
 
 M.,
 
 pl. 1, and
 
 N.,
 
 pl. 2, 6; Vin. Abr. 411,
 
 M.,
 
 pl. 1, 2; 1 Bac. Abr. 534, c. 5; and the books cited in these abridgments,
 
 (a)
 

 The second question is of great difficulty, and of very great importance in its consequence. We cannot find, that it has come directly before any court in England, or in Europe. We wish, that it had come before abler judges than we pretend to be. However, we must give
 
 our
 
 judgment; but we do it with more diffidence than has occurred in any case since we have had the honor to sit here.
 

 As there is no positive law, no adjudged case, nor established rule or order, to direct the court in this point, we must be guided by the principles of the law ; by conscience, that infallible monitor within every judge’s breast, and the original and eternal rules of justice. For equity is part of the law of Pennsylvania. 1 Chan. Ca. 141; Grounds and Rudiments of Law and Equity, 74, ca. 104; Doct. and Stud. lib. 1, cap. 16.
 

 It is agreed, that if a house be destroyed by lightning, floods,-tempests or enemies, without any concurrence of the lessee, or possibility of his preventing the same, this is no waste in the lessee ; 'for, it is not done by the lessee’s negligence, or any wilful act of his ; and he cannot bo charged with using it improperly, and it would thus have perished, even in the reversioner’s possession. 1 Inst. 53 b; Brook, Waste, 69; Herlakenden's
 
 case,
 
 4 Co. 63 b; Landlord’s Law, 1st edition, p. 158, 278, 286; Fitzherbert’s Natura Brevium, Waste, 132; Keilw. 87.
 

 
 *224
 
 It is also agreed, that where the
 
 law
 
 creates a duty or charge, and the party is disabled to perform it, without any default in him, and hath no remedy over, there he shall be excused. As, in the cases of waste against tenants in dower, by the curtesy, for life, or years, of common carriers, inn- * , keepers,
 
 &c.,
 
 of lessees by parol, &c., or of a
 
 *cesser
 
 during a war. *212] Aleyn 27;
 
 Southcote’s case, 4
 
 Co. 84 b; 2 Leon. 189, and other books. But it is contended for the plaintiff, that the defendant is obliged to pay the rent, and yield up the tenements in good order and repair, because of the
 
 express
 
 covenant; and in support of this doctrine have been cited, Doctor and Student, Dialogue 2, chap. 4, p. 124; Aleyn 27; Stiles 47; s. c. 1 Roll. Abr. 939; s. c. Comyn 631, 632; 2 Str. 763; 1 Vent. 185; Plowd. 290
 
 ;
 
 Perkins 738; Brook, tit. Covenant, pl. 4; tit. Waste, pl. 19, 31; 2 Leon. 189; Dyer 33, pl. 10; Saunders 420; 2 Vern. 280.
 

 On the part of the defendant, it is insisted, that the express covenant in this case does not bind against acts of God or enemies, but only against all other events ; because such acts were not in the contemplation of either party, at the time of the lease executed. A risk known and insured ought to be complied with, agreeable to the bargain, but not otherwise. Every contract ought to be construed according to the intention of the parties ; and, in the present case, the defendant had only covenanted to keep the premises in repair, &c., against ordinary accidents, and not against a case, which he could by no possibility prevent. That if the law were otherwise, yet, in England, relief would be had in a court of chancery ; and that as no such action had ever been brought, in a case circumstanced as this is, an argument is furnished, that no such action will lie. In maintenance of this opinion were cited: Ld. Raym. 909; 4 Bac. Abr. 369, 370; 1 Roll. Abr. 236; Dyer 56, pl. 15; 1 Black. Com. 252, 268; 2 Id. 379; 3 Id. 153, 157; Cowper 9, 600; Douglass 190; 1 Comyns Digest. 150; Co. Litt. 206; 1 Brown’s Parl. Cases 526, 528; 15 Vin. Abr. 474, pl. 1; 3 Chan. Rep. 44, 79; 3 Burr. 1240, 1637; Dyer 33, 10; Sir T. Raymond 464;
 
 Shelley’s case,
 
 1 Co. 98; 6 Vin. 407, ca. 1, 3; 1 Chan. Cas. 72, 83, 84, 190.
 

 The books have been thoroughly searched on this head, and the question discussed with great ability on both sides. In short, little more could be done or said for either party, than what has been said and done.
 

 In deciding this intricate and difficult case, it will be of use to state the different powers of the common-law courts, and the court of chancery, in England, at the time of the revolution.
 

 The courts of law there are governed by general and established rules, from which they never deviate in any case, be the injustice arising from them ever so apparent; for, they are bound by their oaths to observe the strict rules of law. A court of chancery judges of every case according to the peculiar circumstances attending it, and is bound not to suffer an act of injustice to prevail; and in doing this, it conforms to the spirit and intent of the general rule of every positive law, which always admits of particular exceptions, tacitly understood. The jurisdiction and bounds of these two-courts are fixed.
 

 *In this State,the judges are sworn “ to do equal right and justice to all men, to the best of their judgment and abilities, according to law.” There is no court of chancery. The judges here are, therefore, to determine causes according to equity, as well as the positive law; equity
 
 *225
 
 being a part of the law. Doctor and Student, lib. 1, ch. 16; 1 Chan. Cases 141; Grounds of Law and Equity, 74, ca. 104. Indeed, the common law is common
 
 right,
 
 common reason, or common justice. Wood’s Inst. 4.
 

 Were this point brought before a court of common law in England, at this day, I have doubts with respect to what would be the determination. For, it is laid down as law,
 
 “
 
 that if a lessee covenanteth to leave a wood in as good plight as the wood was at the time of the lease, and afterwards the trees are overturned by tempest, he is discharged of his covenant,
 
 quia
 
 im-
 
 potentia execusat
 
 legem.” 1 Co. 98
 
 b.
 
 In that case, there was an express
 

 covenant; and although it was impossible to restore the trees in the same plight they were, yet he might plant new ones, or render damages in lieu of them. The same law in Brook, Covenant, pl. 4. Now, was it not equally impossible for the defendant to deliver the possession of the premises, in good repair, to the plaintiffs, on the 1st of March 1778, when they were held by a hostile army ?
 

 In Vaughan’s reports, in the case of
 
 Hayes
 
 v.
 
 Bickerstaff,
 
 p. 122, it is held, “ that a man’s covenant shall not be strained so as to be unreasonable, or that it was improbable to be so intended, without necessary words to make it such; for it is unreasonable to suppo.se a man should covenant against the tortious acts of strangers, impossible for him to prevent, or probably to attempt preventing.” This was an action brought by the Lessee against the lessor, on his covenant for quiet enjoyment. In p. 119, it is said, that if the lessor covenants that the lessee shall hold and enjoy his term, without ontrj- or interruption of any, whether such entry or interruption be lawful or tortious, there the lessor should be charged, because no other meaning can be given to his covenant. In the case before the court, if the lessee had covenanted for himself and his assigns, to deliver up the tenements in good order and repair, notwithstanding they should be destroyed by act of God or of an enemy, then this action would certainly lie, because of the special express words; but when there are no such words, but only generally to repair, &c., would it be reasonable to construe these words so as to extend to the cases put ? Cannot the covenant in this case have another meaning ? Can it not be so construed, that the tenements should be kept in good repair, and in such order delivered up, at the end of the term, without any act or default in him, or act of any person, who could be prosecuted as a wrongdoer, to prevent it; and notwithstanding common and ordinary accidents might happen ?
 

 Perhaps, however, the common-law courts in England might think, that they were bound by the strict rules of law, on account of the general express covenant, to determine against the defendant, and *that his relief must be in chancery, if anywhere, because of the established [*214 rules and boundaries of the jurisdiction of these courts. We must then consider the equity of this case, and determine upon all the circumstances thereof ; for although we have not the chancery forms or methods of carrying several equitable cases into execution, yet we are to determine, where we may, according to equity, as making a part of the law, to prevent a failure of justice. And here we have no precedents in chancery in point, but the case of the office, which was taken away by the usurpers in the civil war in England, reported in 1 Ch. Cas. 72; that of the rent of a house, which was seised by the parliament, during the said war, for an hospital for soldiers,
 
 *226
 
 Ibid. 84, which appears to have been taken under advisement by the chancellor, with a declaration, that, if he could, he would relieve the tenant ; but it was afterwards probably compromised, as we can find no more of it'; that of the recognisance for payment of 10,000i. to legatees, by an executor, where the testator’s estate Avas so lessened by the fire of London, that it became insufficient to make up the sum, Ibid. 190; and that of the fee given with an apprentice, where 120i. was given, and it was provided by articles
 
 expressly,
 
 that if the master died within a year, 60i. were to be returned ; he died in three weeks after the execution of the articles ; and though the parties themselves had provided against accidents, and though the maxim, “
 
 modus et conventio vincunt legem
 
 ” was urged, yet an hundred guineas Avere decreed to be paid back. 1 Vern. 460. I say, these cases, and the uncontradicted assertion of Dunning, that the case of
 
 Paradine
 
 v.
 
 Jane,
 
 and the other cases which ■ went upon the like principles, had been lately overruled in chancery (see 3 Burr. 1689), and also some others, which have been quoted by the defendant’s counsel, hold a doctrine that is strongly in favor of .the defendant.
 

 In Doctor and Student, Dialogue 2, ch. 4, p. 126, Mr. St. German is puzzled to give a satisfactory reason to the question put by the doctor, to Avit, “ II a man under age marries, and lands aftenvards descend to the wife, and waste is committed therein, after her death, without the concurrence or default of the husband, shall he be charged with it?” The case, thus stated, shows, that he could not refuse taking such estate, and therefore, the charge or condition annexed to it by law, is unreasonable and unjust ? He makes the student answer it in this manner : “ That there is as great default in him, as in him in the reversion ; and that there is as great reason Avhy he should be charged Avith the Avaste, as that he in reversion should be disherited, and have no manner of remedy, nor yet no profit of the land, as the other hath.” -But I conceive that as there was no default in either of them, nor remedy over for either of them, that there is more reason, that each of them should bear his own share' of the loss, according to the duration of his estate, than that the one should be responsible to the other. The maxims,
 
 “Lex non cogit impossibilia;” “Impotentia excusat legem;”
 
 *2151 “Constructions are to be with equity *and moderation, to moderate the rigor of the law;” Grounds, &c., 38, ca. 49, apply to the present case.
 

 If a lessor covenant that the lessee shall quietly enjoy against all men, yet in case he is ousted by an enemy, or tortiously entered upon by strangers, no action of covenant can be maintained against the lessor, notwithstanding the express general covenant. For the enemy he could not oppose, and against strangers, he had a remedy over. Vaughan 119, &c. This the counsel for the plaintiff agree to be the law. Why then should the law make the lessee answerable on such a general express covenant to surrender the demised premises in good repair, when they were destroyed by an hostile army ? Ought not the two covenants to receive the like favorable and reasonable construction ? “Remedies are to be reciprocal.” “When then the construction of anything is left to the law, the law, which abhorreth injury and Avrong, will never so construe it, as it shall vvork a wrong. Grounds, &c., 368.
 

 To conclude : Our opinion is, that the defendant ought to pay the rent ;
 
 *227
 
 1st. Because of the express cot enant to pay it. 2d. Because it is a sum certain, and the extent of the loss known ; and as he was to have the advantage of casual profits, he ought to run the hazard of casual losses, during the term, and not lay the whole burden of them upon the lessors; as resolved in Aleyn 27. And 3d. Because if a tenant by
 
 elegit
 
 be interrupted to take the profits of the land, by reason of war, he shall not hold, over, but shall sustain the disadvantage, as resolved in
 
 Sir Andrew Corbitt’s case,
 
 4 Co. 81
 
 b.
 

 But, I am of opinion, that the defendant is excused from his covenant to deliver up the premises in good repair, on the 1st of March 1778 : 1st. Because a covenant to do this, against an act of God or an enemy, ought to be special and express, and so clear that no other meaning could be put upon it. 2d. Because the defendant had no consideration, no premium for this risk, and it was not in the contemplation of either party. And lastly, because equality is equity, and the loss should be divided — he who had the term will lose the temporary profits of the premises, and he who hath the reversion, will bear the loss done to the permanent buildings. Neither party has been guilty of any default; the injury has been done by a common enemy, whom both together could not possibly resist or prevent, and the premises would have been thus damnified in the possession of the plaintiff himself. Suppose, when the lease was executed, that the lessee had been asked — Is it your meaning, that, in case the buildings shall be destroyed by an act of God, or public enemies, you are to rebuild or repair them ? His answer would have been, unquestionably, “No, I never entertained such an idea.” Should the like question have been put to the lessor, his answer would certainly have been, “ No, I do not expect anything so unreasonable.”
 
 [1]
 

 If there is no case in point, in favor of this determination, there is none against it; and since no action of this kind has hitherto *been brought, p¡-21 „ a presumption arises, that the sense of mankind is against it.
 
 (a)
 
 I-f, *- however, we should be thought to be mistaken, another hearing may be had before the High Court of Errors and Appeals, on a writ of error, where this new case may be finally settled,
 

 (b)
 

 (a)
 

 The assignee of a term is bound by a covenant to pay rent, so long as he retains possession, although he did- not execute the-'deed under which he holds: Hurst
 
 v.
 
 Rodney, 1 W. C. C. 375; and see Sandwith
 
 v.
 
 Desilver, 1 Bro. 221.
 
 [1]
 

 [1]
 

 A covenant for the payment of ground-rent runs with the land, and binds the assignee. Roger
 
 v.
 
 Ake, 3 P. &
 
 W. 461; Con
 
 rad
 
 v.
 
 Smith, 6 W. N. C. 402; s. c., 7 Id. 160. So does a covenant to pay the principal of a ground-rent, at the end of a fixed period. Springer
 
 v.
 
 Phillips, 71 Penn. St. 60. And see Sandwith
 
 v.
 
 De Silver, 1 Bro. 221; Herbaugh
 
 v.
 
 Zentinger, 2 Rawle 159. So also, a building covenant in a ground-rent deed, runs with the land, and binds an alienee of the original covenantor. Pisher
 
 v.
 
 Lewis, 1 Clark 422. And a covenant not to underlet, runs with the land, and will be enforced in equity against an assignee of the term. Brolaskey
 
 v.
 
 Hood, 6 Phila. 193. So, of a covenant to renew. Barclay
 
 v.
 
 Steamship Co., Id. 558; Wilkinson v. Pettit, 47 Barb. 230; Piggot
 
 v.
 
 Mason, 1 Paige 412.
 

 (a)
 

 See Smith
 
 v.
 
 Ankrim, 13 S. & R. 39; Kershaw v. Supplee, 1 Rawle 131, 134.
 

 (b)
 

 The parties acquiescing in the decision of the court, no writ of error has been sued out.
 

 [1]
 

 Where aperson covenants unconditionally to do an act, performance is not excused, by inevitable accident, or other unforeseen contingency, not. within his control. Harmony
 
 v.
 
 Bingham, 12 N. Y. 99. Thus, where, in a lease, there is ai express and unconditional agreement to repair and keep in repair, the tenant is bound to do so, though the premises be destroyed by fire, or other accident. Hoy
 
 v.
 
 Holt, 91 Penn. St. 88. The court, however, concede the authority of Pollard
 
 v.
 
 Shaffer, p. 91. The case of Ward
 
 v.
 
 Vance, 93 Perm. St. 499, is an illustration of the doctrine discussed by Chief Justice McKean, in the text.