CHARLES SHEER ET AL.

v.

WILHELMINA FISHER.

*Landlord and Tenant—Overloading Building—Action for Damages—Instructions—Liability of Tenant.*

1. In an action to recover damages for overloading and breaking down the plaintiff's building while occupied by the defendants as tenants, it is *held:* That an instruction which ignored the question of notice of structural weakness, if any, was improperly given; that an instruction asked by the defendants was improperly modified so as to require them to show affirmatively that the fall was not due to their negligence; that certain other instructions were defective; and that the defendants had the right to have submitted to the jury the question whether the plaintiff, her agent, or other tenants, had exercised due care in loading the building.

2. A tenant is only liable for causing a permanent injury to the demised premises over and above the ordinary wear and tear, when such injury is caused by his wrongful act or negligence.

[Opinion filed December 7, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

This was an action of trespass on the case by appellee against appellants and Adolph Mueller and Henry Mueller to recover damages for overloading and breaking down plaintiff's building while defendants were her tenants. The plaintiff was owner of a building numbered 20 and 22 South Desplaines street, Chicago, fronting west, thirty-four feet wide and 160 feet deep. It was divided in the center by a brick wall laid north and south, the west half of the building being five stories high and the east half four. About the last of December, 1885, the plaintiff, by her agent, August Fisher, made a verbal lease to Sheer & Lynch, the appellants, of the west forty-five feet of the third floor in the east half of the building. August Fisher occupied all of the basement in the east half of the building, and all the first floor (except a small space therein for bins rented to Sheer & Lynch), and all of the second floor in the east half of the building. Mueller Brothers occupied the west half of the entire building, except the first floor, as a malt house. On the trial it appeared that Sheer &. Lynch were maltsters, and August Fisher, at the time of leasing to them, knew they leased the space on the third floor to store malt. Fisher testified that when he made the lease he told Sheer that he could only pile his malt six feet high, but Sheer and Henry Mueller both deny that he said anything of the kind. On the contrary they testify that Fisher then said the building was undoubtedly strong enough for storage. Sheer & Lynch took possession of the space rented, built a wooden partition at the east end thereof and had a large quantity of malt deposited there, which Mueller Brothers made for them in their malt house. The evidence was very conflicting as to the amount of malt so stored by Sheer & Lynch, and as to the third floor being overloaded by them. About a month after the renting to Sheer & Lynch they wanted malt of another grade and requested Mueller Brothers to rent from plaintiff space on the east half of the fourth floor to store that grade of malt. Accordingly Mueller Brothers did then rent of plaintiff, through August Fisher, the larger part of the space on the fourth floor of the east half of the building and commenced to store malt there, and at the time of the fall

of the building had there a considerable quantity of malt. August Fisher testified that, at the time of the latter leasing, he knew Sheer & Lynch had eight feet of malt on the third floor, and that was higher than it ought to have been. Evidence was also given tending to prove that the breaking down of the building was caused by the plaintiff in storing large amounts of hay on the first and second floors, and in recklessly and violently tumbling the bales upon the floors; that the building was poorly and insufficiently constructed, the walls being weak and defective on account of previous fires in the building. On April 17, 1886, there being then large quantities of malt stored by Sheer & Lynch on the third floor in the east half of the building, and by Mueller Brothers on the fourth floor of the east half, the roof and all of the floors east of the partition wall broke down and were destroyed.

For the plaintiff the court gave to the jury the following, among other instructions:

"1.   The jury are instructed as a general principle of law that when the owner of real estate rents the same to a tenant and the tenant while in the possession of rented property causes a permanent injury to the building thereon, over and beyond the ordinary wear and tear to the same, this in the law is called waste by the tenant, and the owner's interest in property he has so rented is called his reversionary interest or estate, and the law gives the owner a remedy against the tenant for all permanent injury he so does by himself or his agent.

"2.   The jury are further instructed as a general principle of law in this State, in the simple renting of a building or premises there is no implied warranty that they are fit for any particular use or business; the tenant, in the absence of a special warranty or representations on the part of the landlord, takes the property he rents at his own risk. And in the use of the property rented the tenant is bound to exercise reasonable care and prudence, and if he does not, and the property is permanently injured in consequence of the want of such reasonable care and prudence, then, and in such case, the tenant becomes liable to the owner of the reversion for such damages as are the direct results of the want of such reasona-

ble care and prudence on the part of the tenant, in the use of such premises.

" 3.    The jury are further instructed that, if you believe from the evidence in the case that the plaintiff was owner of the building and premises known as Nos. 20 and 22 South Desplaines street, Chicago, Illinois, in December, 1885, and that the plaintiff, by herself or agent, at that time rented to the defendants, Sheer & Lynch, a part of the third story of said building, and that they took possession of the part so rented by them, the plaintiff then retaining other portions of said building, and if you further believe from the evidence that the defendants, Sheer & Lynch, while the part rented by them was in their possession, either by themselves or their agents, unreasonably overloaded the floor so in their possession, and placed thereon more weight than was reasonable and prudent to be put there, taking into consideration the nature and character of the building and the circumstances under which it was leased, as shown by the evidence, and that in consequence of such overloading (if the evidence shows that such there was) the floor and roof and timbers and other parts of the building were broken and injured, then you should find the defendants, Sheer & Lynch, guilty, and assess the plaintiff's damages at such sum as the proof shows the injury caused, as charged in the declaration."

The court then instructed the jury to find Adolph and Henry Mueller not guilty. To the giving of said instructions the defendants, Sheer & Lynch, excepted. The defendants then asked the court to give to the jury the following, among other instructions:

"5.    The jury are instructed, as a matter of law, that to entitle the plaintiff to recover it should appear by a preponderance of evidence on her part that the careless and negligent conduct of defendants, Sheer & Lynch, in overloading the third floor, was the immediate and direct cause of the fall of the building; and in case it shall appear from the evidence to the satisfaction of the jury that the fall of the building was due to other causes, such as insecure walls, bad construction, bad material, or the overloading of the other floors on the

part of the plaintiff or others, then the jury should find the defendants not guilty.

"6. If the jury believe from the evidence that the defendants had reason to suppose that the said building was reasonably strong and sufficient for the purpose for which the third floor was rented, and that said defendants used said building according to the terms of the leasing thereof, then the jury are instructed to find the said defendants not guilty.

"8. If the jury believe from the evidence that the said plaintiff did either herself, or by her agent, overload the said building, or failed in the exercise of due care and caution in loading the same, on account of which the breakage occurred, then the jury are instructed to find the said defendants not guilty.

"9. They are further instructed that if they should find from the evidence that the defendants, under the instructions of the court, were guilty of negligence in the loading of the building, and that the plaintiff was also guilty of negligence in loading the same, then the jury should find for the defendants, unless they should find that the negligence of the defendants was gross, and that of the plaintiff was slight in comparison therewith."

But the court refused to give these instructions, and altered the same so as to read as follows, to wit:

"5. The jury are instructed, as a matter of law, that to entitle the plaintiff to recover it should appear by a preponderance of evidence on her part that the careless and negligent conduct of defendants, Sheer & Lynch, in overloading the third floor, was the immediate and direct cause of the accident, and in case it shall appear from the evidence, to the satisfaction of the jury, that the accident and injury to the building was due to other causes, and not to the negligence on the part of the defendants, Sheer & Lynch, in unreasonably overloading said floor as charged in the declaration, then, and in such case, the jury should find the defendants, Sheer & Lynch, not guilty.

"6. If the jury believe from the evidence that the defendants had reason to suppose that the said building was reason-

ably strong, and sufficient for the purpose for which the third floor was rented, and the said defendants used said building according to the terms of the leasing thereof, and did not unreasonably load said floor, taking into consideration the nature and character of the building and the circumstances of the leasing as shown by the evidence, then and in such case, the jury should find the defendants, Sheer & Lynch, not guilty.

"8.   If the jury believe from the evidence that the said plaintiff did, either herself, or by her agent, unreasonably overload the first and second floors of said building, or either of them, and that by reason thereof the breakage occurred, then and in such case the jury are instructed to find said defendants not guilty.

"9.   They are further instructed that if they find from the evidence that the defendants were guilty of negligence in the loading of the third floor of the building and further find from the evidence that the plaintiff was also guilty of negligence in overloading the first and second floors, or either of them, then the jury should find for the defendants, unless they should further find from the evidence that the negligence of the defendants was gross, and that of the plaintiff was slight in comparison therewith."

To which refusal of the court to give said instructions as requested, and to the modification thereof, the defendants excepted.

The jury found Sheer & Lynch guilty, assessing damages against them at $1,600 and Mueller Brothers not guilty. Motion for a new trial by Sheer & Lynch overruled and exception.   Judgment on verdict and appeal.

Mr. Sydney C. Eastman, for appellant.

Mr. Rufus King, for appellee.

Garnett, P. J.   To charge appellants with liability for the fall of the building, it was necessary to prove, not only that the third floor was overloaded by them, but that they were informed of its carrying capacity, or had notice of facts

which would have deterred a reasonable and prudent man from placing thereon as much malt as they had stored there. There was evidence tending to prove the building poorly constructed, and from that evidence the jury had the right to infer, if they saw fit, that the building fell because of its ill construction, and that it would not have fallen had it been, in fact, such a building as its appearance indicated. It was also a question for the jury (if they found the building was badly constructed) whether Sheer & Lynch had notice of the poor character of the building. Yet they were informed by the third instruction given for the plaintiff that if Sheer & Lynch unreasonably overloaded the floor in their possession, taking into consideration the nature and character of the building, and that thereby the floor and roof, etc., of the building were broken and injured, they should find them guilty. This, in effect, makes them liable for damages that may have been caused by inherent weakness, or unsound material used in erecting the building (whether they had notice thereof or not), though the weight deposited on the floor may have been such as the apparent character of the building would have led them to believe entirely safe. The instruction having ignored the question of notice, was erroneous.

The sixth instruction asked by the defendants should have been given as asked. The court erred in inserting therein the objectionable words composing a part of the plaintiff's third instruction, upon which we have already commented.

The fifth instruction, in the form requested by the defendants, might have been refused by the court, because the jury would thereby have been told that the plaintiff could not recover unless the loading of the third floor by Sheer & Lynch was the immediate and direct cause of the fall. If they had negligently overloaded the third floor, so that a very moderate and proper load afterward placed on the second floor by plaintiff, without notice of danger, caused the building to fall, the defendants would be liable for the injury, although its immediate and direct cause was the proper load thus placed on the second floor. But the addition made by

Sheer v. Fisher.

the court to this instruction made it necessary to a successful defense, not only that the injury to the building was due to other causes than overloading by Sheer & Lynch, but that they should also believe affirmatively that such injury was not due to their negligence in overloading. The effect of this addition was to impose upon the defendants a burden which the law does not require them to bear. It is enough for their defense that the evidence should show that the building fell from causes other than their overloading, and that it should fail to show that it was caused by their negligence in over-loading. But the instruction as given required the evidence to show affirmatively that the fall was not due to the negligence of Sheer & Lynch, which is a materially different thing from the failure of the evidence to show their negligence. And this is a fatal error, although the instruction as requested by the defendants was erroneous. The court should have refused it, instead of placing it before the jury with an additional and unjust burden laid upon the defendants, which they had not volunteered to assume.

The counsel for appellants has argued, at some length, two other propositions, viz.: (1) The fault of appellee in tumbling bales of hay upon the first and second floors; (2) the liability of appellants for any overloading of the fourth floor that may have been done by Mueller Brothers; and it is taken for granted that these questions were fairly presented to the jury by the eighth and ninth instructions asked on behalf of appellants. They had the right to have submitted to the jury the question whether the plaintiff, or her agent, had exercised due care and caution in loading the building. This involved not only the weights actually placed by her, or her agent, on the other floors of the building, but the manner of placing them there. A hundred bales of hay might have been safely wheeled or hoisted into the first and second stories of the building if carefully and cautiously done, while recklessly throwing them from a wagon upon the first floor, or from a hoisting apparatus upon the second floor, might have caused the very damage of which the plaintiff now complains. As we have shown in the statement of facts, there was evidence

tending to prove that plaintiff's bales of hay were recklessly and violently thrown upon the first and second floors, and the defendants may have the attention of the jury drawn to this feature of the case by a proper instruction on the question of negligence and comparative negligence.

Then appellants claim that the overloading, if there was any, was done either by plaintiff or Mueller Brothers. The renting to Mueller Brothers was about a month after the lease to appellants, and after August Fisher saw more malt on the premises of Sheer & Lynch than he thought there ought to be. He was the plaintiff's agent in these transactions with appellants and Mueller Brothers, and she is chargeable with such knowledge as he had, at the several times, in respect to the building and its occupation. The renting to Mueller Brothers would seem to have been influenced by the desire to make the premises bring more rent, although he then believed the third floor overloaded. No doubt a landlord may prudently and reasonably rent to different persons separate parts of the same building, but if he should so let his building it is manifest that the first tenant is not responsible for the acts of the others in the use of the premises rented by the latter. The negligent act of the latter tenant in the use of said premises is not the act of the landlord (as implied by the eighth and ninth instructions), as the offending tenant is not the agent of the landlord. These two questions the defendants are entitled to have presented to the jury by proper instructions, but they were not so presented by the eighth and ninth instructions, or by any other.

The first instruction given for plaintiff contains a naked proposition of law which is not sound, and the first sentence of the second a supposition which is not sound in its application to the facts of this case. A tenant is not absolutely liable for causing a permanent injury to the demised premises over and above ordinary wear and tear, as stated in the first instruction; such injury must be caused by some wrongful act or negligence of the defendant before he can be made to respond in damages. Nor was the renting to Sheer & Lynch a simple renting, as the jury might infer from the second instruc-

tion.  Both the witnesses who testified for plaintiff as to the renting, stated that the purpose for which the premises were leased was spoken of when the lease was made.  What influence, if any, these two instructions may have had in misleading the jury, we are unable to say, nor do we say that the judgment should be reversed if these were the only errors in the record; but we think these two instructions should not have been submitted without alterations to make the first conform to the law, and the second to the facts of this case.  Whether the renting of premises for a particular purpose, known to the landlord when the lease is made, will or will not raise an implied warranty that they are suitable for that purpose, is not the question.  The tenant is not seeking to recover damages from the landlord for breach of an implied warranty, but alleges, as a defense to the landlord's action, that he was led to think the building was strong enough for the purpose for which he used the demised premises.  If the jury thought the alleged representation by Fisher was not made by him, they might still have found that such belief by appellants was justifiable, if no warning was giving as to the amount of malt that could be safely stored on the floor rented to appellants.

The judgment is reversed and the case remanded.

*Reversed and remanded.*