Aldes W. KENNEDY, Administrator of the Estate of Dafford O. Kennedy, Deceased, Petitioner,

v.

Neona S. KIDD, Respondent.

No. 48235.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 26, 1976.

Released for Publication By Order of Court of Appeals Nov. 18, 1976.

William Bishop, Seminole, for petitioner.

Birdsong & Sanchez, by Stephen W. Davis, Oklahoma City, A. C. Kidd, Earl A. Davis, Wewoka, Diane L. Davis, Oklahoma City, for respondent.

BOX, Judge.

This cause is before us on a petition for writ of certiorari pursuant to 12 O.S.1971, Ch. 15, App. 2, Rules 1.50–1.67. Petitioner, Administrator of the estate of Dafford O. Kennedy, deceased, seeks review of a certified interlocutory order overruling her demurrer to the petition of Neona S. Kidd, respondent. We grant certiorari, reverse the trial court's order and remand with instructions to dismiss respondent's action.

I

Some time in 1974 the decedent, Dafford O. Kennedy, rented an apartment from the

respondent pursuant to an oral agreement. It is agreed that a month to month tenancy was thereby established. On June 1, 1974, while alone in his apartment, the decedent died of an apparent heart attack. His partially decomposed body was not discovered until a week later. According to respondent, the putrid odors associated with the decedent's body necessitated the complete refurbishing of the apartment.

Respondent presented petitioner, the decedent's administrator, with a timely claim for payment of rent and reimbursement of her expenses in renovating the apartment. This claim was disallowed except for some $90.00 in unpaid rent. Respondent then brought suit to enforce the claim, seeking more than $4,000 in expenses and rental fees for the two month period during which the apartment was being renovated. Petitioner filed a general demurrer to respondent's petition. The trial judge overruled the demurrer but upon petitioner's motion, certified the order for purposes of interlocutory review.

## II

Petitioner contends that under no theory of recovery, equitable or legal, may a decedent's estate be held responsible for loss of the kind which respondent claims to have suffered. In order for respondent to recover from the estate, petitioner maintains, it would have to be shown that respondent's loss was caused by some act or omission of the decedent or that the loss became in some other way an indebtedness of the decedent during his lifetime. Respondent is unable to allege either of these circumstances here, petitioner contends, because the loss was in fact only an unfortunate consequence of the decedent's death. And losses of that nature, petitioner asserts, ought to be considered *damnum absque injuria*. That is to say, respondent's loss is one which gives rise to no cause of action and for which the law affords no remedy. See, e.g., *Alabama Power Co. v. Ickes*, 302 U.S. 464, 58 S.Ct. 300, 82 L.Ed. 374.

Respondent concedes much of petitioner's argument. She agrees that she would have no cause of action in tort, or in waste, and she disclaims any intent to rely upon any acts or omissions of the decedent during his lifetime. Her claim is predicated solely upon the landlord-tenant relationship which existed between the decedent and respondent. Respondent puts forth two theories for holding the estate liable: (1) the decedent, and his estate after him, was bound by a common law duty to return the leasehold in the same general condition in which it was at the time of letting, and, as a consequence, the estate was liable for all damages to the apartment over and above ordinary "wear and tear"; and (2) public policy demands that the tenant's estate, rather than the landlord, bear losses of the kind at issue here. We consider the merits of each of respondent's theories of recovery below.

## III

Respondent contends that the common law imposes an implied covenant upon the tenant to redeliver the premises at the end of the term in the same general condition in which they were in at the time of the letting. Because there was no written lease providing otherwise, respondent maintains, the decedent was bound by this implied covenant. The decedent's estate, moreover, assumed this obligation at his death because a month to month tenancy is not terminated by the death of the tenant; the estate simply steps into the decedent's shoes and may terminate the tenancy only by giving the statutorily required notice. 41 O.S.1971, § 4. Petitioner should be held liable for the breach of this implied covenant, respondent argues, because the damages to the apartment resulting from the decedent's death are precisely the kind of damages for which a tenant ought to be held legally responsible.

As we have noted, both parties agree that a month to month (or periodic) tenancy was created by the oral agreement between respondent and the decedent. The

month to month tenancy, which is of course a creature of the common law, is recognized by statute in Oklahoma, 41 O.S.1971, § 3. Like its common law predecessor, a chief attribute of the statutory month to month tenancy is that it continues in force until proper notice of termination is given. 41 O.S.1971, § 4. It would seem, then, that like the common law tenancy, the statutory tenancy could not be terminated merely by the death of either the lessor or the lessee; the appropriate notice would still be required. See generally Annot., 68 A.L.R. 590, 594 (1930). The estate of the deceased landlord or tenant would therefore assume the decedent's obligations under the tenancy until the notice to terminate was given. See, e. g., *Baum v. Tazwell*, 26 N.J.Misc. 292, 61 A. 2d 12; *Dorfman v. Barnett*, 24 N.J.Misc. 212, 48 A.2d 217. Applying these principles here leads to the conclusion that the decedent's estate assumed, at least for some short period of time, the decedent's obligations under the month to month tenancy, including any implied covenant of the nature described by the respondent. Whether there is such an implied covenant and, if there is, whether the estate would be liable for the respondent's damages, are questions which we must consider.

It is clear that the common law imposed upon the tenant, independent of express agreement, a general and somewhat undefined obligation to treat the premises in such a way that no substantial injury would be done to the property during the tenancy. See generally *United States v. Bostwick*, 94 U.S. 53, 24 L.Ed. 65; G. Thompson, 3 A Real Property § 1273 (1959). It is doubtful, however, that this obligation was ever as all-embracing as the kind of implied covenant described by respondent. Respondent would have us believe that the tenant is responsible for any form of damage to the premises not resulting from ordinary "wear and tear", unless the damage is attributable to certain limited circumstances wholly beyond the tenant's control—such as the acts of the reversioner, an unavoidable accident, the misdeeds of a public enemy, or natural causes (the so-called "Acts of God"). Under this line of reasoning it is not necessary, in order to hold petitioner liable, to prove some wilful misconduct or misfeasance on the part of the decedent; it is necessary only to show the fact of loss and the inapplicability of any of the narrowly circumscribed exceptions to the tenant's liability. And in the present case, respondent maintains, the damage to the apartment was neither the result of ordinary wear and tear nor the consequence of the kinds of unavoidable circumstances for which a tenant or his estate may not be held responsible; hence the liability of the decedent's estate logically follows.

One obvious flaw in the respondent's argument is that the implied covenant, thus viewed, virtually has the effect of making the tenant the landlord's insurer. We think it clear that the common law stopped short of placing so burdensome a duty upon the tenant. The essence of the common law duty was to exercise reasonable care with respect to the premises so that they reverted to the landlord at the end of the tenancy unharmed by any acts of negligence, waste, or nuisance on the part of the tenant. See, e. g., *Hill v. McKay*, 1 W.W.Harr. 213, 31 Del. 213, 113 A. 804; Thompson, supra § 1273. The landlord could thus hold the tenant responsible for any injuries to the premises resulting from the tenant's negligence, wilful misconduct, waste or nuisance. See Thompson, supra; 49 Am.Jur.2d *Landlord and Tenant* § 922 (1970). But when the injury to the premises could clearly not be shown to have been caused by some culpable conduct of the tenant, the landlord could not invoke the covenant in order to force the tenant to respond in damages. *Sheer v. Fisher*, 27 Ill.App. 464; *Stultz v. Locke*, 47 Md. 562; Thompson, supra, § 1273. Respondent concedes, as he must, that there was no culpable conduct on the part of the decedent and it therefore seems an inescapable conclusion that the dece-

dent's estate may not be held liable for breach of implied covenant.

Even if we were to accept the argument that the tenant is liable under an implied covenant for any permanent injury over and above ordinary wear and tear, it is difficult to perceive how the decedent's estate could be held responsible for the kind of loss suffered by respondent. Even under this theory it seems quite apparent that the damages occurred as a result of precisely the kind of unavoidable circumstances for which the tenant was never responsible even under the ancient common law. See *Attersoll v. Stevens*, 1 Taunt. 183; 4 Kent's Comm. 77; Thompson, supra, § 1273. As respondent concedes, the implied covenant doctrine has never been employed to justify holding a tenant liable for damage caused by acts of nature which he could not have foreseen and was powerless to prevent. See, e. g., *Pollard v. Shaaffer*, 1 U.S. (1 Dall.) 210, 1 L.Ed. 104; *United States v. Bostwick*, 94 U.S. 53, 24 L.Ed. 65. It is difficult to imagine a more clear cut example of just such an occurrence than the death of a tenant by natural causes. Accordingly, even if we view the month to month tenancy as continuing past the death of the decedent and even if we accept the contention that this implied covenant was assumed by the estate upon decedent's death, the estate could not be held liable for damages of the kind involved here.

As petitioner forcefully argues, another deficiency in respondent's argument is that the implied covenant doctrine, to the extent that it imposes strict liability upon the tenant for all injuries not attributable to either ordinary wear and tear or unavoidable circumstances, is clearly contrary to 41 O. S.1971, § 31. That statute provides:

"The lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put it into a condition fit for such occupation, and repair all subsequent dilapidations thereof, except that the lessee must repair all deteriorations or injuries thereto occasioned by his ordinary negligence."

Section 31 is of course declaratory of the common law implied covenant doctrine in one sense: the tenant is liable for injuries to the premises occasioned by his ordinary negligence. But the statute clearly abrogates any common law duty, assuming *arguendo* that there was one, to pay for any damages to the premises that were not caused by the tenant's culpable conduct. That would seem to be the only logical conclusion in view of the affirmative duty of the landlord to repair all dilapidations not caused by the tenant's own negligence.

### IV

■ We turn to respondent's contention that public policy dictates holding the estate liable for her loss. Respondent's argument, in essence, is that even if she has no cause of action against the estate under an implied covenant theory, she should be allowed to recover on public policy grounds because she is the more innocent of the parties. Because the damage to her apartment was the result of the decedent's death, respondent urges, it is the estate to whom the damage is most fairly attributable, and it is thus the estate which should bear the loss. We find this contention unacceptable.

The damage to the respondent's apartment, it must be emphasized, was not caused by the acts or omissions of the decedent, his estate, or anyone else. What caused the damage was the decomposition of the decedent's body—the inexorable process of biological decay. Since no one "caused" the damage, and no one could have prevented it without knowing of decedent's death, it is inappropriate to view respondent's claim in terms of relative fault or innocence. Both respondent and petitioner are equally innocent parties, and when viewed as such it is difficult to justify shifting the loss from one to the other.

■ Even if we were to accept the contention that on general public policy

grounds the decedent's estate ought to bear the loss, we could not legally compel it to do so without expanding the liability of a decedent's estate beyond that contemplated by statute. An administrator may pay a claim against the estate only if the claim is either (1) for a debt incurred by or for the decedent during his lifetime or (2) for an indebtedness which the administrator is clearly authorized by statute to pay. *In Re Goodin's Estate*, 198 Okl. 9, 174 P.2d 375. Respondent's claim does not fall within either category. Clearly respondent's claim is not for any valid obligation incurred by the decedent during his lifetime. And respondent concedes, as she must, that her claim is not for the kind of indebtedness which the statutes authorize the administrator to pay out of the decedent's estate.

■ We must therefore conclude that respondent's petition fails to state a cause of action against the estate under either theory urged on appeal. We must also conclude that the losses for which respondent seeks compensation must be borne by her alone, for we are unable to perceive any legal or equitable theory under which respondent may recover her losses from the decedent's estate. That respondent has suffered an unfortunate loss cannot be denied. But this fact alone does not entitle respondent to obtain recompense from the assets of the estate. She must also show that the decedent, or his estate, invaded her legal rights or that they are in some other way chargeable with the injury. This she cannot do. The loss that respondent sustained is no different from the loss that the unrequited plaintiff suffers at the hands of a public enemy, 4 Kent's Comm. 77, a natural disaster, *Gulf Oil Corp. v. Lemmons*, 198 Okl. 596, 181 P.2d 568, or an unavoidable accident, *Wilson v. Roach*, 101 Okl. 30, 222 P. 1000; there is simply no liability for the loss. Respondent's loss, then, is *damnum absque injuria.*

We accordingly reverse the trial court's certified interlocutory order and remand this case with directions to dismiss.

REVERSED AND REMANDED. -

REYNOLDS, P. J., and ROMANG, J., concur.