## NASHVILLE *v.* SUTHERLAND & CO.

### (*Nashville.*    January 30, 1895.)

1. MUNICIPAL CORPORATIONS.  *Liability for defective construction of public works.*

   A city that contracts with one through whose land it constructs a sewer, to so construct it with a suitable valve as to prevent the water of the river from flowing back through the sewer in case of high tides, is responsible for · damages resulting from the city engineer's negligence in selecting valve and constructing sewer.  (*Post, pp. 357–365.*)

   Cases cited: Nashville *v.* Sutherland & Co., 92 Tenn., 335; Burton *v.* Chattanooga, 7 Lea, 739.

2. SAME.  *Same.*

   A landowner who permits a city to construct a sewer through his premises under a contract that joints of the pipes shall be cemented, and a suitable valve supplied to prevent the water from flowing back from the river in case of high tides, does not waive or lose his right to damages caused by an overflow resulting from defective execution of the work, because he did not protest when he saw the joints were not cemented, and a valve different from that contracted for used under the supervision of the city engineer.  (*Post, pp. 365–368.*)

3. SAME.  *Measure of damages.*

   In suit by the owner of a lumber yard against a city for damages caused by an overflow resulting from breach of its contract to so construct a sewer that plaintiff's premises will not be overflowed in case of high water, expenses incurred for labor, machinery, etc., in pumping out the water, by which the damages to the lumber is diminished, may be ·properly allowed. (*Post, p. 369.*)

---

### FROM DAVIDSON.

---

Appeal from Circuit Court of Davidson County. J. W. BONNER, J.

CLAUDE WALLER and FRANK SLEMONS for Nashville.

WHITMAN & GAMBLE for Sutherland & Co.

WILKES, J.   This is an action by Sutherland & Co. against the city of Nashville for damages.   There was a trial before the Court below and a jury, and a verdict and judgment for $1,768, and the city has appealed.

Sutherland & Co., in 1888, were the owners of certain property in Nashville, situated on the east side of the Cumberland River, on which was located a lumber yard and planing mill.   Adjacent to this property was a pool or pond of stagnant water, which the Mayor and City Council, through the Board of Public Works and Affairs, desired to drain by means of a sewer-pipe, leading to the river through plaintiffs' premises.   Specifications and plans of a suitable sewer, showing size and quality of pipe, means of connection at the river, and the manner in which the work was to be done, were prepared by the city engineer, and filed in his office. The Mayor, etc., did not condemn a right of way across the property in question, but an easement was purchased by the Board' of Public Works and Affairs in the following contract, to wit:

"For and in consideration of one hundred and fifty dollars, cash to us in hand paid, the receipt of which is acknowledged, and other valuable considerations by us received from the Mayor and City

Council of Nashville, we, William Sutherland and Charles A. Graves, do hereby sell and grant unto the said Mayor and City Council of Nashville the right, power, authority, and privilege to enter upon the realty owned by us between Bridge Avenue and Main Street, and First Street and the Cumberland River, to construct, keep up, and maintain a sewer or drain, commencing at or near the west end of an alley, that is now in existence on said property, about midway between Bridge Avenue and Main Street, and which runs parallel to said streets to First Street. The said sewer or drain to be constructed according to the plans and specifications now on file in the city engineer's office, to which reference is expressly made, and the same is adopted as a part hereof as fully as if expressly set out and described in detail. So far as may be necessary in constructing and keeping up and in repair said sewer, an interest is hereby conveyed in said realty. We covenant, agree, and bind ourselves that we are lawfully seized and possessed of said realty, have a good right to convey it for such purposes, and that the same is unincumbered, and that we will warrant and defend the title against all lawful claims whatsoever.

"*It is further agreed, and the city of Nashville binds itself, to have said sewer so constructed with a suitable valve as will prevent, in case of high rise of river, the flowing of water from the river back through said pipe or sewer into the lot or premises*

*of said Sutherland and Graves, to their injury or damage.*

"The city further agrees to place the roadways of said parties back in as good condition as before the same is disturbed by the laying of said sewer-pipe; and, should said sewer have to be repaired at any time, the city will likewise put said roadway back in good and first-class condition. This the fifteenth day of June, 1888.     WM. SUTHERLAND,

"CHAS. A. GRAVES."

Subsequently, on the eighteenth of June, 1888, the Board of Public Works and Affairs entered into a contract with Ryan & Shea, contractors, to construct the sewer according to the specifications filed in the city engineer's office, being the same referred to in the contract purchasing the right of way. This contract, with the specifications attached, is fully set out in the record. This contract was executed by the said Ryan & Shea, and the work was completed sometime in the summer or fall of the year 1888.

In March, 1890, something more than eighteen months after the sewer had been completed, there was a high rise in the Cumberland River, which overflowed Sutherland & Co.'s property. There was at that time a quantity of lumber stacked on the lot, a portion of which was overflowed and seriously damaged. For this damage Sutherland & Co. brought suit against the Mayor and City Council of Nashville.

There are three counts in the first declaration filed, each one alleging a breach, in several particulars, of the contract heretofore set out in full, by reason of which the water ran back through the sewer pipe and flooded their lumber and machinery.

In the first trial of the case, the Circuit Judge charged the jury that that portion of the contract set out above in italics was an absolute guarantee on the part of the city against injury. There was a verdict against the city, and, upon appeal to this Honorable Court, a new trial was granted, upon the ground that the provision insuring Sutherland & Co. against damage was *ultra vires*, so far as it undertook to make the city a guarantor against injury in any contingency. *Nashville* v. *Sutherland & Co.*, 8 Pickle, 335.

The first count in the original declaration is based upon the contract and the further allegation that, in constructing the sewer, worthless and unsuitable valve material was used, and that the sewer joints and valve connected therewith were constructed, laid, and joined together in a careless, negligent, improper, and unworkmanlike manner, which caused great quantities of water, during a freshet, to be forced back through the valve and pipes and sewer until it covered plaintiffs' lot and damaged their lumber stacked thereon with water and mud, and plaintiffs were put to great expense in trying to pump the water off the lot in order to prevent the same.

The second count is substantially the same, and

based upon the idea that improper material was used, and the work negligently done under the contract.

The third count sets out the contract, and alleges as a breach that unsuitable material was used, and the workmanship was defective, which caused the damage.

After the cause was remanded from the Supreme Court, an amended declaration was filed charging unsuitableness of the valve and other material used, and careless, negligent, and improper and unworkmanlike manner of construction and joining together, the result of which was the damage sued for without mentioning the contract. To this amended declaration the defendant filed a plea of not guilty, and the statute of limitations of three years. On the trial, and after the proof was all in, the trial Judge sustained the plea of the statute of limitations, the effect of which was to strike out the amended declaration.

It is claimed by the defendants in error that this flood caused them damage to lumber in the sum of $1,750, and expense in preventing increased damage, by way of employing engineers and firemen, $150; and for hauling to the premises a pump, and operating the same, $150; and for use of boilers, for fuel and oil, and for removing and replacing machinery, $250.

The first assignment of error is that there is no evidence to sustain the verdict.

The second assignment is that the Court erred in charging as follows:

"(*a*) The question for you to solve, so far as that (the valve) is concerned, is: Did the city use ordinary care in providing a backwater trap at that point? Was it reasonably sufficient, and reasonably adapted to the purpose for which it was designed? If so, there can be no liability accruing against the city on that account.

"(*b*) You will, then, gentlemen, consider all the circumstances of the case—location of the pipe, the method by which it opened into the pond and the method by which it was discharged into the river, the means provided by the city to prevent the flow of the backwater into the pipe, the manner in which the joints were constructed—and from all this you are to determine whether or not the city did or did not exercise ordinary diligence in doing this work. If it did exercise ordinary care, and, notwithstanding that fact, and without fault on its part, the plaintiff was injured, then your verdict should be for the defendants; but if they did fail to exercise ordinary care, and by reason thereof the plaintiff was injured, then your duty would be to find for the plaintiff.

"(*c*) In regard to damages : The damages which any party is entitled to recover must be such as are the natural and proximate result of the wrong complained of. Now, by natural is meant, simply, according to the natural course of events. By proximate is meant that which directly flows as an effect from some cause which is the sole, responsible, and

efficient cause of the injury. In other words, if the negligence of the city, in this case, was the responsible cause of the damage to the plaintiffs, the cause without which the injury would not have occurred, that would be the proximate cause.

"(*d*) The Court will charge you further, at the request of the plaintiffs, that it was the duty of the city, in providing a valve, or backwater trap, to make it reasonably safe and well adapted for the purposes for which it was designed."

The fifth assignment may be considered in connection with the second, and is that the charge, taken as a whole, was misleading and confusing to the jury, as follows: The jury is told that the suit is for a breach of contract, and then, subsequently, they are instructed, in arriving at the city's liability, to consider whether or not it exercised ordinary care in making the improvement; whereas, the principle which measures its liability is whether or not it did what it contracted to do. It is insisted that, under the original declaration, the suit being based upon the contract, the jury should have been instructed that the question was not whether the city exercised ordinary care, so as to escape common law liability, but did it construct the sewer according to the contract; and that the specifications of the contract furnish the limits to the rights and responsibilities of the parties.

The contract in this case makes the specifications of the city engineer a part of the contract, and it

must be read in connection with these specifications, as the contract gives no specifications on its face. These specifications, so far as material, provide that the whole of the joints shall be. thoroughly cemented and made water tight. The whole of the brickwork shall be set in cement mortar as specified. The manhole to be furnished with an iron frame and curve in accordance with the drawings of the same. There is a provision as to the composition of the mortar, that it shall be one part cement of the best quality, of a certain tensile strength. It further provides for one manhole complete, with fifteen inch backwater trap. The pipes must be packed at least six inches above them, and the trench must be refilled and carefully rammed; the engineer to have full power to condemn all defective or unsuitable material or work.

It is evident from its terms that this contract obligates the city to condemn all defective or unsuitable material or work, or, what is the same thing, to use only suitable material, and have the work carefully and properly done. It is also apparent that the plaintiffs were then relying upon the city's guarantee, and it was but natural that they should feel disposed to leave the selection of material and mode of construction to the superior knowledge and skill of the city engineer.

It will be noticed that the backwater trap is not in any way described in the specifications, but the joints and pipes were to be laid in cement, and the

entrance to the sewer was to be provided with a
netting to keep out drift; and the gravamen of the
charge is that the water trap was unsuitable; that
the water pipes and joints were not laid in cement,
and a network was not placed over the entrance.

Conceding that the city could not be held as a
guarantor, and that, so far as material and mode
of construction were specifically set out in the en-
gineer's specifications, the plaintiffs could insist upon
nothing different, still, it is true that, under this
contract, the kind of a water trap was left to the
discretion of the city engineer; and the charge of
the Court was, in substance, that, in selecting such
valve or trap, and in constructing the sewer, laying
the pipe, and cementing the joints, the city must
use ordinary care, and would be responsible for the
want of such care; and this is correct, both under
the contract and the idea of a common law liabil-
ity. *Burton* v. *Chattanooga*, 7 Lea, 739; Jones on
Negligence of Municipal Corp., Secs. 139, 143, 144.

It is insisted that the plaintiffs, with full knowl-
edge, acquiesced in the manner in which the work
was executed, and made no objection to the kind of
water valve or trap furnished, or to the manner in
which the pipes were laid, for more than a year
after the work was completed, and until the damage
was done, and hence they are estopped to claim
damages.

In this connection, the Circuit Judge was re-
quested to charge the following propositions:

"1. If you find from the evidence that the plaintiffs, or either of them, were present, from time to time, when the sewer was being constructed, and knew that the joints of pipe were not being laid in cement, as the plans and specifications required, and made no complaint to the officers and agents of the city on account thereof, but permitted the city, or its contractors, to lay said pipes across their property without laying the joints in cement, then they cannot hold the city liable for any damages resulting from a variation from' the specifications as to cemented joints.

"2. If you find from the evidence that the plaintiffs knew that the joints were not being laid in cement, as the specifications required, made no complaint on account thereof, and acquiesced in the variation from the specifications, then the city is not liable for a suit for a breach of contract from any damages resulting from such variation.

"3. If you find from the evidence that the plaintiffs knew, as the work progressed through their property, that the joints were not cemented, then the measure of damages for a breach of contract for a failure to cement the joints is the cost of cementing said joints, for plaintiffs could have done this, and it was their duty to have it done, if they believed it necessary to the protection of their property.

"4. If you find from the evidence that the plaintiffs knew when the water valve was put in that it

was ineffectual for the purpose for which it was intended, and that such a valve would subject their property to overflow, then it was their duty, in order to protect their property, to procure a suitable valve; and, if they failed to do this, they were guilty of contributory negligence, and therefore cannot recover from any damage resulting on account of the valve used.

"5. The defendants, the Mayor and City Council of Nashville, cannot, by contract, destroy the discretion and judgment of its officers and agents in carrying out public improvements. It has no right, by its officers and agents, to bind itself to carry out public improvements upon an impossible and impracticable plan. If, therefore, you find that the agents and officers bound themselves to the plaintiffs to cement the joints in the sewer in question, and that it has been proved in evidence by experts that it developed in the prosecution of the work that it was impossible or impracticable to cement said joints, then the contract binding the city to cement the same is void, and of no effect." All of which were refused, and no charge was given upon the question of acquiescence or estoppel.

It must be borne in mind that this work was being done for the benefit of the city, and not for the plaintiffs, or at their request, and their premises were being used simply as a convenient, if not indispensable, way to reach the river and effect the drainage. The contract to build the sewer was be-

tween the city and contractor, and the plaintiffs were in nowise responsible for the materials used or the manner in which the work was done, except so far as was specifically provided in the contract. The kind of material used and the character of the work to be done was, in the first instance, in the discretion and sound judgment of the corporation, and it was the duty of the corporation to select such a valve or water trap as would be reasonably fit for the purposes for which it was to be used, and to so lay and cement the pipes as to make them effective to protect the plaintiffs' premises from all overflow, to which it had not been previously subjected. The fact that the city adopted and used a kind of water trap different from that deemed best by plaintiffs, and that it laid the pipes without cement, either from necessity or because some other mode was deemed best by the city engineer, did not make it incumbent on the plaintiffs to protest or enjoin the city, but they were warranted in permitting the city to take the risk of the apparatus used and the manner of construction, and the plaintiffs cannot be prejudiced in acquiescing in the supposed superior judgment of the city engineer as to material and construction until they were shown, by actual test, to be faulty. It cannot be held that the citizen must set up his judgment against that of an expert engineer and be prejudiced if he fail to do so. *Burton* v. *Chattanooga*, 7 Lea, 739; Jones on Neg. Mun. Corp., Secs. 142, 143, 144, 155.

There is abundant evidence to show the liability of the city, and the only question remaining is as to the measure of damages. The Court instructed the jury that, if they found the city liable, they could give Sutherland & Co. the damage to the lumber, expense of pumping, etc., to prevent increased damage, wages paid engineer and firemen during overflow, hauling pump and returning same, etc., and it is insisted these are not ·proper elements of damage in this case. We see no error in this. The plaintiff's yards were being used for stacking lumber when this sewer was put in. Previous to that time such lumber was safe from damage by overflow. After that, when the freshet came, plaintiff's premises were inundated; as a consequence of this overflow, their lumber was damaged. Such damage the city is liable for. It is shown that this damage was decreased by the use of pumps and labor furnished by plaintiff, and greatly reduced the damage that would otherwise have ensued.

We think these are legitimate items of damage, and the jury, from the proof, was well warranted in so finding.

The judgment is affirmed with costs.