HUNTINGTON DEVELOPMENT & GAS COMPANY *v.*
W. M. TOPPING *et al.*

(No. 8031)

Submitted September 25, 1934. Decided October 2, 1934.

*Harold A. Ritz, W. C. W. Renshaw* and *B. J. Pettigrew,* for plaintiff in error.

*Daugherty & Daugherty* and *F. W. Riggs,* for defendants in error.

MAXWELL, JUDGE:

The Huntington Development & Gas Company prosecutes this writ of error to a judgment of *nil capiat* entered against it by the circuit court of Cabell County, sitting without a jury. The action is by the said gas company against W. M. Topping and others for $3,510.17 for natural gas asserted by the plaintiff to have been furnished by it to the defendants under contract between it and them.

The gas company is a public utility of the city of Huntington. For the purpose of obtaining gas for the domestic use of themselves and others, W. M. Topping and his associates, rural residents, in 1920 constructed a two-inch extension gas line about a mile and a half in length, and, under arrangement with the gas company, connected it with one of the company's high pressure lines. Service was thus obtained.

Later, it being conceived by the management of the gas company that much gas was being lost through leakage in the said extension, the company was instrumental in the formulation of a contract in 1924 between it and Topping and his associates, whereby it was agreed that a master meter should be set at the conjunction of the extension and high pressure lines, and that the owners of the extension, operating under the name of Four Pole Gas Company, should pay to the said utility, plaintiff, a sum equal to the difference between the consumption of gas as registered on the master meter and the total of the consumption of gas of all the consumers who had connections with the extension. By its terms, the supplemental contract was to remain in effect "until the pipe line is properly repaired and placed in an efficient operating condition." The validity of the contract was upheld by this court in the case of *Huntington Development & Gas Company.* v. *Public Service Commission,* 105 W. Va. 629, 143 S. E. 357, decided in May, 1928.

The purpose of this action is to recover for the amount of such alleged leakage from June, 1927, to April, 1934. If the plaintiff has right of recovery, the amount it claims is not challenged by the defendants. But the right itself is challenged. The controversy centers on the method of gas measurement which should be employed. If the company's method is sound, there is right of recovery; otherwise there is not.

The position of the defendants, sustained by the trial court, is that under the said contract they are only required to pay for the difference between the volume of gas as registered by the master meter and the aggregate volume of gas which passed through the consumers' meters. The plaintiff says that such basis is not sound because it ignores pressure—an essential element.

It is undisputed, as appears from the plaintiff's records, that for the period of time for which it seeks recovery, gas passed through the master meter at an average monthly pressure of from three to twenty-seven pounds above atmospheric pressure, which is fourteen and four-tenths pounds per square inch according to plaintiff's expert. (Standard authorities generally state that atmospheric pressure is about fourteen and seven-tenths pounds.) It is likewise undisputed that during said period gas passed through the consumers' meters under a pressure of eight ounces above atmospheric pressure.

It is testified on behalf of the plaintiff—and the matter seems obvious—that in a cubic foot of gas under high pressure, there is a corresponding increase in the number of atoms thereof; it is denser. When the pressure is relieved, the density diminishes and the volume increases; therefore at the consumers' meters where the pressure was reduced to eight ounces the gas would have much less density and consequently much greater volume than when it came through the master meter under high pressure. By way of illustration, the expert witness, testifying on behalf of the plaintiff, says that under a pressure of fifteen pounds (above atmospheric pressure) there is practically twice as much gas in the same vol-

ume as under a pressure of only eight ounces (above atmospheric pressure).

It is testified on behalf of the plaintiff, and not contradicted, that this principle is so generally recognized in industry that there has been devised a scientific table based on "Boyle's Law", which prescribes the method of calculating the volume of gas under different pressures. The principle of physics known as "Boyle's Law" is that as the pressure of gas increases at a fixed temperature, the volume decreases in inverse proportion, or the product of the pressure and volume is a constant quantity. It is on the basis of calculations made in accordance with the rules deduced from "Boyle's Law" that the amount claimed in this action is ascertained. The evidence discloses fully from the plaintiff's records the volume of gas which passed through the master meter each month of the period involved, the average pressure for each month, and the aggregate of the gas which passed through the domestic consumers' meters for each month at the fixed pressure of eight ounces.

By employing "Boyle's Law" as the basis of calculation, the volume of gas which passed through the master meter under high pressure is stated in terms of the increased volume which it would acquire when the pressure is reduced to eight ounces. From this total of low pressure gas delivered through the master meter there is deducted the aggregate of all gas which passed through the consumers' meters. The difference between the two is the amount for which the plaintiff claims the defendants should account under their contract of December, 1924.

The principle of physics invoked by the plaintiff is a familiar one. The legal position of the plaintiff is likewise sound, for, since the contract required the defendants to pay for the excess of gas passing through the master meter over that which thereafter passed through the consumers' meters, and since the gas at the latter meters was measured under a pressure of eight ounces, it must be deemed that the parties to the contract intended that the gas furnished by the plaintiff to the de-

fendants should be measured on the same basis of pressure as that which obtained at the domestic consumers' meters. Otherwise a very anomalous situation would be presented.

For these reasons we reverse the judgment of the trial court and enter judgment here for the full amount of the plaintiff's claim. *McKown* v. *Citizens State Bank*, 91 W. Va. 716, 114 S. E. 271.

*Reversed; judgment rendered.*