INTER-OCEAN CASUALTY COMPANY *v.* LECCONY SMOKELESS
FUEL COMPANY *et al.*

(No. 9170)

Submitted September 24, 1941. Decided October 14, 1941.

*J. W. Maxwell* and *Mahan, Bacon & White,* for plaintiffs in error.

*File, Scherer & File* and *Sayre & Bowers,* for defendant in error.

RILEY, JUDGE:

Plaintiff, Inter-Ocean Casualty Company, a corporation, filed in the Circuit Court of Raleigh County against Leccony Smokeless Fuel Company, a corporation, Harry E. Moran, Claude Jarrett and Richard R. Conant, a notice of motion for judgment in the amount of $3,605.98, alleging only the common counts in *indebitatus* assumpsit. To a judgment against Moran and Jarrett in the amount declared on, based upon a directed verdict, they prosecute this writ of error.

A bill of particulars was filed to plaintiff's notice, setting forth items of an account for money alleged to have been collected by the defendants from the employees of the Leccony Smokeless Coal Company, a corporation, which should have been paid to plaintiff for premiums on policies of insurance issued by plaintiff to said employees, and diverted by defendants to other purposes. At the conclusion of the evidence the defendants, except Conant, who had not been served with the notice, moved to strike the evidence and direct a verdict. This was sustained as to Leccony Smokeless Fuel Company, which had purchased the properties of Leccony Smokeless Coal Company at a receivership sale after the amounts declared on had become due, but the court overruled the motion as to Moran and Jarrett, and, upon plaintiff's motion, directed a verdict against the last-mentioned defendants and entered thereon the judgment complained of.

On April 1, 1930, the Leccony Smokeless Coal Company entered into a written agreement with plaintiff's agent, West Virginia & Kentucky Insurance Agency, whereby the latter agreed to carry coverage of industrial insurance for accident and death upon the coal company's employees. The material part of the contract relating to premium payments reads:

"We agree to pay, collect, or cause to be collected, the premiums as above shown, for each person whose name appears on the pay roll, during the month and to furnish report of the gross monthly collections, less 10% commissions, together with remittance for same to West Va. and Ky. Insurance Agency * * * not later than the 15th of the month following the close of each month's pay roll."

The contract provided for a term of twelve months and unless terminated, as therein provided, a continuance thereof for similar terms thereafter.

Until the closing of its operation by the appointment of a receiver in a pending chancery suit on December 15, 1938, the Leccony Smokeless Coal Company was engaged in the production of coal in Raleigh County. The defendant, Leccony Smokeless Fuel Company, was organized in September, 1939, acquired the properties formerly operated by the coal company, and continued to carry the industrial insurance with plaintiff. From 1935 to and including 1938, the defendant Moran was president and Jarrett was vice president and general manager of the coal company, and, together with Conant, constituted its board of directors. The coal produced by the coal company was sold by the Lake & Export Coal Corporation, having its principal office in New York City, with Moran as president and Conant as secretary and treasurer. As early as 1933, the coal company was and continued to be insolvent and unable to pay its debts.

The first proposition stated by counsel for defendants, to the effect that under *White* v. *Conley,* 108 W. Va. 658, 152 S. E. 527, and *Stuart* v. *Carter,* 79 W. Va. 92, 90 S. E. 537, liability for unliquidated damages due to breach of contract cannot be asserted by notice of motion for judgment, is untenable here for the reason that plaintiff seeks to recover specific sums of money alleged to be due on a contract and not for damages for the breach thereof.

Here plaintiff asserts liability on the theory that money was received by the coal company for the insurance premiums and converted by plaintiffs in error. Of course,

a plaintiff is entitled to recover on an implied promise or for money had and received, where a benefit has accrued to one converting money or property. In such a case the person wronged may waive the tort and recover on contract. *Walker* v. *Norfolk & W. R. Co.,* 67 W. Va. 273, 67 S. E. 722; *Wilson* v. *Schrader,* 73 W. Va. 105, 79 S. E. 1083, Ann. Cas. 1916D 886; *Parkersburg & Marietta Sand Co.* v. *Smith,* 76 W. Va. 246, 85 S. E. 516, Ann. Cas. 1918E 449; *First National Bank of Welch, Admr.* v. *Bailey,* 97 W. Va. 19, 29, 30, 125 S. E. 357; *Pine & Cypress Mfg. Co.* v. *American Engineering & Construction Co.,* 97 W. Va. 471, 125 S. E. 375.

However, the record here discloses that the coal company, after it encountered its financial difficulties, received no money for insurance premiums from its sales agency in New York. It simply checked the names of its employees who were covered by the insurance on a list furnished monthly by the insurance company and returned the list after it was checked. The transaction was a bookkeeping operation. Deductions were made on the books of the company from the pay of the employees on account of insurance premiums, but the premiums were never paid because there was no money with which to pay them. Between the plaintiff insurance company and the coal company the relation was that of creditor and debtor. In this regard the case of *McKee* (*McKey*), *Trustee* v. *Paradise,* 299 U. S. 119, 57 S. Ct. 124, 81 L. Ed. 75, is in point. There an employer undertook by agreement to make specified deductions from its employees' wages as they accrued, and to pay over the amounts to an association maintained on their behalf. The Supreme Court of the United States held that this state of facts made the employer the debtor of the association, as to the amounts charged to the employees and credited to the association, and not paid over or placed in a special fund. The coal company was without funds after wages and costs of operation were paid. There being no money in its hands belonging to the plaintiff, there was none to convert, and, therefore, there was no tort to waive. It follows that if plaintiff should rest its entire case on the

theory of an implied contract, it is not entitled to prevail.

But plaintiff's counsel argue that the "directors, officers or agents are personally liable for conversion of another's property or funds, if they participate in the wrong, or have knowledge amounting to consent or acquiescence, or are guilty of culpable negligence in allowing the commission of the wrong; and this is so even if they act in behalf of the corporation, and do not personally benefit or profit therefrom." 3 Fletcher's Cyc. Corporations, Permanent Edition, sections 1140 and 1141, and several cases of other jurisdictions are cited. The answer to this position lies in the practice governing actions at law and notices of motion for judgment which has prevailed in this state for many years. Plaintiff here attempts to prove a claimed misrepresentation and fraud through checking of the monthly reports which plaintiff claims prompted it to continue the insurance. Fraud and misrepresentation in this jurisdiction must be clearly alleged. *Charter* v. *Kump,* 109 W. Va. 33, 152 S. E. 780; *Hale* v. *West Virginia Oil & Oil Land Co.,* 11 W. Va. 229; *Loomis* v. *Jackson,* 6 W. Va. 613; *Brown* v. *Shields,* 6 Leigh (Va.) 440. And it must be proved as alleged. *LaFollette* v. *Croft,* 122 W. Va. 727, 14 S. E. (2d) 917; *Tokas* v. *J. J. Arnold Co.,* 122 W. Va. 613, 11 S. E. (2d) 759; *Hutchinson* v. *Walton,* 119 W. Va. 709, 196 S. E. 20; *Hunt* v. *Hunt,* 91 W. Va. 685, 114 S. E. 283; *Butts* v. *Sun Lumber Co.,* 82 W. Va. 113, 95 S. E. 585; *Board of Trustees of Oberlin College* v. *Blair,* 45 W. Va. 812, 32 S. E. 203. The bare allegation of the common counts in assumpsit in a notice of motion for judgment does not meet the requirements of pleading.

Moreover, the record here does not disclose any active misfeasance on the part of Moran and Jarrett as officers and directors of the coal company. Certainly they received no benefit from the failure of their corporation to account for and pay over the amount of the premiums to the insurance company. In this state it is well settled that the creditor of a moneyed corporation cannot maintain an action at law against the directors thereof for simply nonfeasance of duty to the corporation or fraud in its management or mismanagement in the disposition of the

money or property of the corporation in the absence of an active intent to deceive or defraud the plaintiff. *Zinn* v. *Mendel,* 9 W. Va. 580. This rule, we think, should be applied with equal force to the officers and directors of private corporations. This, of course, does not mean that under the cloak of corporate enterprise, wrongdoing may be done with impunity. Such has not been the holding of this Court. *Atwater & Co.* v. *Fall River Pocahontas Collieries Co.,* 119 W. Va. 549, 195 S. E. 99; *Southern Co-Op Foundry Co.* v. *Warlick Furniture Co.,* 117 W. Va. 336, 185 S. E. 773; *Tynes* v. *Shore, Id.* 355, 185 S. E. 845. On the other hand, the stockholders of a corporation are not liable for its debts in the absence of fraud, special contract or special statutory liability. In *The Wesley Corporation* v. *Blackburn,* 107 W. Va. 519, 149 S. E. 22, this Court said: "The evasion of personal liability is a common motive prompting persons to engage in business through the instrumentality of a corporation." And, by the same token and reasoning, neither are the directors nor officers liable in the absence of active wrongdoing.

But plaintiff's counsel say that this record discloses an implied or constructive trust created by the pay roll deductions on the records of the corporation for the insurance premiums. On this point they cite *Sullivan* v. *Madeleine Smokeless Coal Co.,* 115 W. Va. 115, 175 S. E. 521; *Keller* v. *Washington,* 83 W. Va. 659, 98 S. E. 880; *Henson* v. *Lamb,* 120 W. Va. 552, 199 S. E. 459. The Keller case involves the acceptance of money by a husband as trustee for his wife with regard to its investment, and *Henson* v. *Lamb, supra,* as shown by points 2 and 4 of the syllabus, deals with the effect of the payment of money to a bank for a specific purpose. Neither of these cases is in point. Here no money was paid to the coal company for the insurance premiums. The transaction, as we have suggested, was merely one of bookkeeping. There was no fund available to constitute a trust *res.* Where there is no trust property, there can be no trust. 1 Restatement, Trusts, section 74. The case of *Sullivan* v. *Madeleine Smokeless Coal Co., supra,* does not hold that a trust can be created without a trust *res.* It involves

simply the commingling of trust funds with other funds. In the case of such commingling, where money is wrongfully withdrawn, it is presumed that the trustee withdraws funds other than the trust funds. In *McKee (McKey), Trustee* v. *Paradise, supra,* the Court expressly held that the employer, like the employer here, was a debtor, and the relationship contemplated by the contract did not create a trust. In deference to plaintiff's learned counsel, we feel constrained to say that the trust theory advanced is of no avail.

For the foregoing reasons, the judgment of the circuit court is reversed, the verdict of the jury set aside, and judgment entered here dismissing the notice of motion for judgment with costs to plaintiffs in error in this and the circuit court. It is so ordered.

*Judgment reversed; verdict set aside; entered.*