# MRS. MARIE KERR BISHOP v. ASSOCIATED TRANSPORT, INC. —332 S. W. (2d) 696.

Middle Section.  August 28, 1959.

Certiorari Denied by Supreme Court February 5, 1960.

James R. Tuck, W. Ovid Collins, Jr., Nashville, for complainant.

Creekmore, Buhl & Thompson, Knoxville, Mortimer Allen Sullivan, Buffalo, N. Y., Williams, Harwell, Howser & Thomas, Nashville, for defendant.

I

SHRIVER, J. This is a suit by a landlord for damages sustained by reason of the destruction of the buildings on the leased premises, when a sublessee deliberately set fire thereto.

Appellant Associated Transport, Inc., on July 31, 1948 leased from the owner certain property located on Third Avenue South, in Nashville, Tennessee. Pursuant to a provision of said lease authorizing it to do so, appellant sublet the property to Jess Wilson in March, 1953. On March 20, 1954 said Jess Wilson and some confederates deliberately set fire to the buildings on said property with the result that they were completely destroyed, and Wilson has been convicted of arson for his act.

It is for the damages resulting from this fire that the complainant, appellee, seeks to hold the defendant, appellant, liable.

The cause was heard by the Chancellor on the pleadings, a stipulation of the facts to be treated as evidence in the cause, together with exhibit thereto and the deposition of John F. Lee taken on behalf of complainant, and resulted in a decree in favor of the complainant, awarding judgment of $18,390 and costs, from which decree the defendant has appealed and assigned errors. This being a broad appeal the complainant, appellee, has also assigned errors.

## II

As set out in the original bill, the facts in this case are that appellant and appellee's predecessor in interest entered into a lease of the premises in question, which lease contained the following covenants:

"Second: The Lessee is hereby given the right to sublet all or any portion of the demised premises during the term of this agreement or any extensions hereof, and to assign this lease provided that the Lessee shall nevertheless remain liable to the Lessor for the performance of all the terms and conditions on Lessee's part to be performed hereunder."

"Ninth: The Lessee will, at the termination of this lease or any extension or renewal thereof, quietly and peaceably surrender the demised premises to the Lessor, in a reasonably good state of repair, ordinary wear and tear and damages by fire and the elements and structural repairs or maintenance for which Lessor is liable hereunder being, however, specifically excepted.

"Tenth: The Lessee agrees that it will not so conduct its operations as to cause the rate for fire

insurance on the demised premises to be increased and further agrees that it will not do or permit to be done on the said demised premises, anything contrary to the laws of the United States, or the State of Tennessee or the City of Nashville, nor any rules of the Board of Health of the City of Nashville.'' (Ex. No. 1 to Original Bill, Rec. p. 10.)

Following the execution of this lease appellant entered into a sublease with one Jess Wilson, who was in possession on March 20, 1954. On that date Wilson, with two confederates, committed certain acts of arson on the premises which resulted in the destruction of buildings thereon by fire.

There was a demurrer filed by the defendant which was overruled by the Chancellor with leave to rely on it in the answer. The answer, not waiving the demurrer, admitted the existence of the lease in question and the subletting to Jess Wilson. It is asserted that the appellant had no knowledge of the unlawful act of Jess Wilson and such act was not permitted by defendant. The answer sets up the defense that it was not the intention of the parties to the lease to impose upon the lessee the obligation of insuring or indemnifying the lessor against the destruction of the leased premises through the agency of some person acting without permission of the lessee, and that its failure to return the premises in good condition at the termination of the lease was not a violation of the provisions of the lease which specifically excused such return in the event of damage by fire.

In appellee's reply brief it is stated:

''We agree with Appellant (Brief p. 16) as to the principal question presented by its appeal, i. e.:

"Whether a tenant who has agreed to remain liable for the performance of all terms and conditions of a lease may avoid responsibility for the deliberate burning of the demised premises by its sub-tenant by relying on the fact that the provision requiring the surrender of the premises in good repair excepts 'damages by fire.' "

There is a stipulation of the parties which affords most of the evidence pertinent to the inquiry herein.

## III

### Appellant's Assignment of Error

Assignment of error No. 1:

"The Chancellor erred in overruling the demurrer of the defendant and entering a judgment of respondeat ouster. Such action was error for the following reasons;"

Here the appellant assigns five reasons in support of the first assignment.

Assignment No. 2:

"The Chancellor erred in finding and holding that the defendant had been guilty of any breach of the covenants of the lease upon which the bill of complainant was predicated, particularly in holding that defendant had been guilty of a breach of covenant Ninth of said lease, and in entering a decree based on such finding.

"This was error because covenant Ninth of the lease specifically excluded destruction by fire from its terms."

## IV

Under assignment No. 1, hereinabove, it is said that the demurrer should have been sustained because the bill of complaint was predicated on a contract which did not show any obligation to insure or indemnify against the destruction of the leased premises through the agency of any person acting without the permission of the lessee.

When the lessee subleased to Jess Wilson, the second covenant of the lease, hereinabove quoted, operated to render the lessee liable to the lessor for the performance of all the terms and conditions of the contract in the hands of the sub-lessee, and we think that the fact that Wilson, the sublessee, may have acted without the permission of the lessee in destroying the property, is not determinative of the questions here involved.

Under the first assignment it was also said that the bill of complaint should have been dismissed because it failed to show that the complainant gave the defendant notice as required by Section 7 of the lease, which notice, it is insisted, was a prerequisite to the bringing of suit against the defendant for breach of the terms of the lease.

Item 7 contains the following language which is significant:

"Lessor shall be entitled at any time during the term of this lease to give written notice to lessee at its principle offices by registered mail stating (a) where a specific breach, omission or default on the part of lessee is claimed to exist (b) that lessee is required to correct such breach, omission or default within 15 days from the date of actual receipt of such written notice by the lessee and in the event of

lessee's failure to correct such breach, omission or default within the time specified, lessor will avail herself of any legal remedies she may have under this lease or otherwise.''

■ It is conceded that under the fourth covenant of the lease, when the premises were totally destroyed by fire said lease automatically terminated. Where a lease is terminated by one of the parties the further performance of its terms and conditions by the other is excused. Moreover, the premises could not possibly have been restored to their original condition in 15 days. Thus, we think that the question of notice under the section hereinabove referred to did not apply so as to preclude complainant from action in the premises.

The third proposition under the first assignment is that the bill was defective because the lease on which the bill was predicated provided two specific and exclusive remedies for breach of covenant, neither of which was pursued by complainant.

We are unable to find provisions in the lease agreement which could be said to afford the exclusive remedy which complainant was required to pursue in circumstances such as those shown in this case. We think there is no merit in this contention of the appellant.

■ The fourth proposition insisted on under assignment No. 1, is that the bill showed on its face that the destruction of the leased property resulted from an independent crime not connected with the operation of the business of the defendant or his sublessee, and an act against which the defendant could not have provided, and, for the result of which, it is not responsible.

We agree with the Chancellor that this ground of the demurrer was not sufficient to require a dismissal of the bill, but proof of the facts so as to determine any possible connection between the crime of arson and the operation of the business by the sublessee, was proper in order to make a determination of this question. Furthermore, the question of responsibility on the part of the lessee is the ultimate question for decision here.

The fifth ground under assignment No. 1, is that the bill should have been dismissed because it showed on its face that the loss of the leased premises by fire was excluded from the obligation assumed by the lessee to return the premises to the lessor in good condition.

It will be noticed that this ground of the demurrer corresponds with assignment No. 2, and presents one of the determinative questions in this case.

Section 9 of the lease which the Chancellor found had been violated by the lessee, and upon which he predicated his judgment, provides, as is seen from the quotation thereof, that, on termination of the lease, the lessee will quietly and peaceably surrender the premises to the lessor in a reasonably good state of repair, ordinary wear and tear and *damages by fire* and the elements and structural repairs or maintenance for which lessor is liable, being specifically excepted.

Learned counsel for appellants have very earnestly argued that, since the premises were destroyed by fire, the above provisions of the lease exempts the lessee from liability for the return of the demised premises to the lessor in a reasonably good state of repair.

Counsel have very ably and skilfully presented their case and have cited many authorities on the general proposition of a lessee's liability under clauses similar to the one in the lease here under consideration, but we have been cited no case and have found none that is exactly parallel to the case at bar.

We have been unable to persuade ourselves to believe that the parties to the lease here involved ever contemplated, or took into consideration, or attempted to provide in the lease contract, for or against contingencies such as those here under consideration. In other words, we do not believe that the parties, by the provisions of the lease, intended to excuse the lessee from responsibility for fire which was intentionally set by him or his agent or by a sublessee, and which resulted in the destruction of the buildings on the property.

■ The language of section 9 of the lease was intended to cover damages by fire in the ordinary sense of the word, to wit, fire that occurred by accident or from conditions beyond the control of the lessee or sublessee and not fire which was deliberately set by one of the parties. We think that where the leased premises were destroyed by fire which was deliberately set by the lessee or by one for whose violation of the covenants of the lease the lessee is liable, there was a breach of the covenant to return the premises in good repair and that the "Fire excepted" exclusion has no application.

We have a statute in Tennessee bearing on this subject. Secs. 64-702 and 64-703 T. C. A. provide as follows:

64-702 "Surrender of lease on injury to buildings. Where any building which is leased or occupied is

destroyed or so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, surrender possession of the premises; and he is not liable to pay the lessor or owner rent for the time subsequent to the surrender.''

64-703 ''Covenant to leave in good repair.—Nor, in such event, shall a covenant or promise by the lessee to leave or restore the premises in good repair have the effect to bind him to erect or pay for such buildings as may be so destroyed, unless in respect of the matter of loss or destruction there was neglect or fault on his part, or unless he has expressly stipulated in writing to be so bound.''

In Robbins v. Life Ins. Co. of Virginia, 169 Tenn. 507, 89 S. W. (2d) 340, 104 A. L. R. 1376, it was held that laws affecting the construction, enforcement, or discharge of a contract, which subsist at the time and place of making of the contract, and where it is to be performed, form part of it as fully as if expressly referred to or incorporated therein.

As is stated in 32 Am. Jur. 339 and in many cases, a subletting does not in any manner affect the liability of the lessee to his lessor for the performance of the covenants of the lease, and especially is this true where the lease, as in the case at bar, provides that the lessee shall remain responsible, and where the lessor has no control whatsoever over the selection of the sublessee. Significantly the third covenant in the lease is:

"Third: The Lessor agrees, at her own expense, to make all necessary repairs to the roof and to make all necessary structural repairs /on the demised premises, but the Lessee shall be responsible for the making of all other repairs if the condition requiring repair has been caused by the negligence of the Lessee."

It is pointed out by counsel for appellee that if the fire in this case had only partially damaged the premises appellant would have been liable for the cost of necessary repairs under this provision, and that appellant is in the untenable position of arguing that since the fire resulted in total loss and was occasioned by wilfulness instead of negligence, the lessee is relieved of all responsibility under its contract by the phrase "Damages by fire excepted" in paragraph 9.

Counsel for appellee further make the plausible argument that appellant's position is untenable because it is dependent on the fortuitous circumstance that the building was destroyed by fire rather than some other means. For instance, if Jess Wilson had accomplished its destruction in some manner other than by fire, appellant's obligation under paragraph 9 would have been absolute, and without the benefit of any such exception as it now relies on.

It is argued, therefore, that it is obvious that when the parties inserted the exemption from liability for damages from fire, they did not contemplate and did not exclude damages resulting from a deliberate and wilful fire and that no reasonable person would ask for or expect to receive immunity from liability for such an act. As suggested hereinabove, many authorities may be

found to the effect that, where the covenant to return the property in good condition contains an exclusion of damage by "fire and the elements", this exclusion does not apply if they are the result of the neligence or misconduct of the lessee.

In 32 Am. Jur. 669, the general rule is stated as follows:

"* * * A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term he shall yield possession 'subject to loss by fire.' "

In Carstens v. Western Pipe & Steel Co., 142 Wash. 259, 252 P. 939, it was held that a lease excepting damage by fire from lessee's covenant to surrender premises in good condition, did not exempt the lessee from liability for a negligent fire, and it was further held that a lease exempting the lessee from damages by fire should not be construed to exempt the lessee from liability for negligence unless clearly so intended. And in Salina Coca-Cola Bottling Corp. v. Rogers, 171 Kan. 688, 237 P. (2d) 218, it was pointed out that, independently of an express covenant, the law imposes on a tenant the obligation to return the leased premises at the termination of the tenancy substantially in the same condition as when he received possession, ordinary wear and tear excepted, and to restore the property to the landlord at the end of the term unimpaired by the negligence of the tenants. It was also held that if a building on the leased premises burned because of the negligence of the tenant then the tenant was liable to the landlord to the extent of the damage caused by fire.

In 32 Am. Jur. p. 668 under the title "Landlord and Tenant", Sec. 783 it is said a tenant is liable to the landlord for destruction of buildings on demised premises by fire caused by tenant's negligence, "even though the lease contains a provision that he shall yield possession 'subject to loss by fire'. The burning of a building through the negligent keeping of a fire by a tenant is regarded by modern text-writers as permissive waste."

Again it is said in the same text, Sec. 810:

"According to the general rule, the fact that the injuries to the demised premises were caused by the wrongful act of a third person does not relieve the tenant from liability on his covenant to deliver up the premises in good condition or the like."

And in Sec. 814, it is said:

"A covenant by the lessee as to the condition of the demised premises at the expiration of the term, such as a covenant to deliver them up in good order and repair, runs with the land. The burden of such a covenant is binding upon an assignee of the leasehold."

To like effect is 51 C. J. S. Landlord and Tenant sec. 413, p. 1161, where it is said that a tenant's covenant to surrender the premises in a specified condition at the end of the term runs with the land, and "A tenant is not released from such a covenant by a sublease in the absence of an agreement by the landlord". And sec. 416:

"The burden is on the tenant to show that the damage is due to an excepted cause * * *."

In 34 A. L. R., note p. 786 it is stated:

"It has been the general view of the courts that there is no more apt covenant to run with the land than one by the lessee to keep the premises in good, tenantable repair."

The Tennessee case Shelby v. Hearne, 14 Tenn. 512, is in accord with the above cited cases in holding that a covenant to leave the premises in repair runs with the land.

In McGaff v. Scrimshire, Tex. Civ. App., 155 S. W. 796, it was said:

"A tenant who makes a sublease is not thereby released from his obligation to return the property, on the expiration of the lease, in as good condition as he received it, ordinary wear and tear alone excepted, * * * where the sublease was not made with any agreement on the landlord's part that the tenant should be released."

To like effect is the holding in Pollard v. Shaaffer, 1 U. S. 210, 1 L. Ed. 104, 1 Am. Dec. 239.

## V

At the conclusion of the very ably prepared and well reasoned brief of the appellants the statement is made that the construction of the lease sought by the appellants would not leave the lessor without a remedy for the damages suffered, and that, "She still has that given her by law by way of an action in tort for it is not our position that the contract absolved anyone from tort liability."

■ We think that where a breach of a covenant in a lease also constitutes a tort, the lessor may elect to bring his action in contract rather than in tort.

Vertrees v. Tennessee Automobile Corp., 5 Tenn. App. 140, was a case brought in Part II of the Chancery Court at Nashville to recover for damages to the complainant's property alleged to have been caused by the tenant's negligence, we quote the fourth Syl.:

"Evidence in the instant case held to show that the defendant was guilty of negligence in caring for the landlord's property and was liable for damages thereto."

Also see City of Nashville v. Sutherland & Co., 94 Tenn. 356, 29 S. W. 228; Salina Coca-Cola Bottling Corporation v. Rogers, supra, 237 P. (2d) 218, and numerous cases.

## VI

Appellee assigns the following errors:

"1. That the Chancellor erred in failing to find that appellant breached covenant tenth of the lease.

"2. That the Chancellor erred in allowing judgment for only $18,390.00 but should have awarded $26,760.00."

We feel that covenant 10 in the lease had to do with the mode and type of business operated by the lessee or sublessee on the premises and that the Chancellor was correct in declining to predicate relief on that section of the contract. However, a discussion of this provision in the contract is not necessary to a decision of the case, in view of the above conclusions, hence we pretermit same.

As to the second assignment, it is insisted by the appellee that the preponderance of the proof shows that the value of appellee's building was $34,500 instead of $30,-000, as found by the Chancellor, and that it was error to decline, as the Chancellor did, to deduct the amount of the attorney's fees necessarily incurred by the appellee in the receivership action against Jess Wilson.

As is pointed out by counsel for appellant, the Chancellor was undoubtedly aware that during the more than three years between appellee's purchase of the property and the fire, there had been some depreciation of the property.

■■ The only proof introduced as to the value of the destroyed property is to be found in items 3 and 7 of the stipulation which are to the effect that the leased premises were purchased by the appellee on April 23, 1951 for $52,500 and sold by her on June 21, 1954, after the fire, for $18,000. The difference between those two figures is the amount insisted on as damages by the complainant, appellee, here. While in some of our cases it is said that where no affirmative evidence to the contrary appears, the difference in the value before and after a casualty may be shown by the purchase and sale prices, obviously, this is a very unsatisfactory mode of arriving at a valuation and is very uncertain at best. More than this, the record reflects that in a suit in the Circuit Court brought by the appellee herein against Jess Wilson, and where the amount of the damages resulting from the fire was the principal issue, a jury found the damages to be $30,000. While, of course, this is not conclusive of this question, it is, nevertheless, a very plausible basis for

adjudging the damages, and is, perhaps, more satisfactory than the purchase and sale prices for that purpose.

As to the attorneys' fees, we are not satisfied that the appellant is liable for the fees paid appellee's attorneys in the Circuit Court case. Generally, except in case of contract to furnish counsel, the Courts have not allowed attorneys fees in suits of this nature.

Thus, we concur in the action of the Chancellor. It results that the assignments of error of both parties are overruled and the judgment of the Chancellor is, in all things, affirmed.

Affirmed.

Hickerson, J., concurs.

Felts, J., dissents.