COMMUNITY INSURANCE AGENCY,
INC., Appellant,

v.

Fredrick L. KEMPER, et al.,
Defendants,

2730 Portland Properties, et al., Gregory
N. Meyers, William J. Anderson, et al.,
Trayne Properties, et al., International
Investments, et al., Respondents.

No. C4–87–2390.

Court of Appeals of Minnesota.

July 5, 1988.
Review Denied Sept. 16, 1988.

David R. Knodell, Olson, Gunn and Seran, Ltd., Minneapolis, for appellant.

Larry Wertheim, Holmes & Graven, Chartered, Minneapolis, for 2730 Portland Properties, et al.

Gregory N. Meyers, New Brighton, pro se.

Richard H. Speeter, Speeter, Johnson, Hautman & Olson, Minneapolis, for William J. Anderson, et al.

John Harrigan, Mark V. Lofstrom, Harrigan, Hanley and Poirier, Minneapolis, for Trayne Properties, et al.

Andy L. Bond, Minneapolis, for International Investments, et al.

Heard, considered and decided by PARKER, P.J., and NORTON and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Appeal arises from the trial court's judgment in favor of respondents in a claim against them for monies allegedly due appellant as a junior creditor on property foreclosed upon by the senior mortgagee.

## FACTS

Appellant, Community Insurance Agency, Inc., appeals judgment barring its claims against respondents due to appellant's failure to redeem the subject property (a thirty-one-unit apartment building located at 2730 Portland Avenue, Minneapolis, Minnesota), during the statutory period of redemption.

Appellant, as junior creditor, is the assignee of the vendor's interest in the second of five contracts for deed on the subject property. Respondents Andersons, Trayne Properties (Trayne), International Investments (International) and Portland Properties (Portland), were involved in a series of transfers, by contract for deed, of the subject property. They are the vendees on the second, third, fourth and fifth contracts.

On August 2, 1977, the fee owners, K/B/M, mortgaged the subject property with Midwest Federal Savings and Loan for $235,000. The mortgage includes a due-on-sale clause allowing Midwest to accelerate the balance due if the property was sold. On August 31, 1977, K/B/M sold the property, on a contract for deed (Contract 1), to Bonnicksens. The purchase price was $345,000; Bonnicksens assumed the $235,000 mortgage and paid $75,000 to K/B/M.

On April 4, 1979, Bonnicksens sold, on a contract for deed, the property to the Andersons (Contract 2). The agreement provided Andersons pay $20,000 down, assume the balance of Midwest's mortgage of $231,286.23, pay $72,484.19, the balance due on Contract 1, and pay Bonnicksens $87,727.58. Bonnicksens assigned their right to $87,727.58 to appellant.

On July 2, 1979, Andersons sold the property to Trayne on a contract for deed (Contract 3). The purchase price was $433,000 with $25,500 down. Trayne assumed the balance owing on Contract 1, the balance owing on Contract 2, and owed $17,962.77 to Andersons.

On February 21, 1980, Trayne transferred its interest to International (Contract 4). Until International sold the property, it paid Contract 2 payments directly to appellant and Contract 1 payments directly to K/B/M out of the payment due Trayne.

On June 1, 1981, International sold the property to Portland on a contract for deed (Contract 5). The purchase price was $470,000 with a down payment of $34,351.32. Portland assumed payment of the balance owing on Contract 4 equaling $405,718.06. This purchase created a new

contract balance of $29,930.42 payable to International. After June 1, 1981, Portland made Contract 2 payments directly to appellant.

Midwest had consented to: (1) the transfer of the property from K/B/M to the Bonnicksens; (2) the transfer from Bonnicksens to Andersons, and (3) the transfer from Andersons to Trayne. Midwest was not advised of the assignment of Bonnicksen's interest to Community in April, 1979. Prior to the time Midwest consented to the transfer from Andersons to Trayne, Midwest received notice from the property's insurer that Community was an additional insured. Midwest neither consented nor objected to the assignment of Bonnicksen's interest to Community.

Midwest did not consent to the transfer from Trayne to International, nor the transfer to Portland. As a consequence of the transfer from International to Portland, Midwest accelerated the balance due on the mortgage pursuant to the due-on-sale clause. Foreclosure proceedings by advertisement were commenced by Midwest in October 1981.

The foreclosure sale was held December 23, 1981. Midwest purchased the property at the foreclosure sale for $243,000.19. Appellant had actual knowledge of the foreclosure and had both actual and constructive knowledge of the statutory redemption, period which expired June 23, 1982. Appellant failed to exercise its right of redemption as junior creditor.

The trial court concluded appellant, as a contract for deed holder of indebtedness, had an obligation as a junior creditor to redeem from the foreclosure of a senior mortgagee and failure to do so bars appellant's claims.

## ISSUES

1. Is an assignee on a contract for deed, as a junior creditor, barred from collecting the contract debt because of failure to redeem from the foreclosure of a senior mortgage?

2. Does causing the foreclosure of a senior mortgage with a due-on-sale clause, by selling and purchasing subject property without obtaining the mortgagee's consent, constitute tortious interference with a pre-existing contract for deed vendor's right?

3. Did respondents International and Portland impliedly assume a contract obligation owed appellant?

## ANALYSIS

The continuing dispute over foreclosure of the subject property has brought the parties before this court a second time. In the previous case this court stated:

> Community made no attempt to redeem the property, although it received notice of the foreclosure. Community's president, an experienced lawyer, banker and real estate broker, took no action in the face of both a cancellation proceeding and a foreclosure. He admitted his own negligence.

*Petition of Midwest Federal Savings and Loan Ass'n,* 359 N.W.2d 33, 37 (Minn.Ct. App.1984).

1. Failure To Redeem.

Here the trial court in its reliance on the previous matter, concluded appellant's claims against respondents are barred due to appellant's negligent failure to redeem the subject property from the senior mortgagee, Midwest. We agree.

The Minnesota legislature has provided a statutory remedy for creditors of those whose property is in foreclosure:

> If no such redemption be made by the mortgagor, the mortgagor's personal representatives or assigns, the senior creditor having a lien, legal or equitable, upon the mortgaged premises, or some part thereof, subsequent to the mortgage, may redeem within five days after the expiration of the redemption period specified in section 580.23; and each subsequent creditor having a lien in succession, according to priority of liens, within five days after the time allowed the prior lienholder, respectively may redeem by paying the amount aforesaid and all liens prior to the lienholder's own held by the person from whom redemption is made; provided that no creditor shall be entitled

to redeem unless within the period allowed for redemption the creditor file for record notice of intention to redeem with the county recorder or registrar of titles of each county where the mortgage is recorded.

Minn.Stat. § 580.24.

Strict compliance with the statute is required of all lienholders. *Graybow–Daniels Co. v. Pinotti*, 255 N.W.2d 405, 407 (Minn.1977).

▮ Essentially, appellant elected a forfeiture of its interest over redeeming the property from Midwest. By not exercising its right of redemption, appellant's interest in the subject property as junior creditor is forfeited. Thus appellant's action for the contract price as damages will not lie.

▮ Had appellant redeemed, alternate remedies would have been available. A vendor may elect cancellation of the contract or sue for general damages when a vendee defaults under a contract for deed. *Zirinsky v. Sheehan*, 413 F.2d 481 (1969), *cert. denied* 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753 (1970), citations omitted.

▮ A vendor may not elect to pursue inconsistent remedies by proceeding with an action based on affirmance of the contract, such as a suit for damages, and then use a theory based on disaffirmance of the contract, such as forfeiture. *Abodeely v. Cavras*, 221 N.W.2d 494 (Iowa 1974).

Appellant contends this matter is controlled by *Robitshek v. Maetzold*, 198 Minn. 586, 270 N.W. 579 (1936). We disagree. In *Robitshek* the supreme court arrived at an equitable decision based upon a finding that the defendant's wrongdoing resulted in plaintiff's loss. Here, the foreclosure occurred as a result of Midwest's election to accelerate a due-on-sale clause contained in the senior mortgage and not respondents' wrongdoing. Moreover, equitable relief as in *Robitshek* is not appropriate where appellant, sophisticated in real estate transactions, knowingly assumed an investment risk by acquiring an interest in property subject to a senior encumbrance.

Without retained interest in the subject property, alternative remedies are no long-er available to appellant. Thus, in electing to forfeit its interest by failing to redeem, appellant is barred from its claim for damages due to loss of the contract price.

**2. Tortious Interference With Contract.**

[4] Basic elements for finding tortious interference with contract are:

(1) existence of a contract;

(2) alleged wrongdoer's knowledge of the contract;

(3) his intentional procurement of its breach;

(4) without justification; and

(5) damages resulting therefrom.

*Royal Realty Co. v. Levin*, 244 Minn. 288, 69 N.W.2d 667, 671 (1955).

There is no dispute a contract exists. Further, there is no dispute all parties involved knew of the existence of the contract(s) for deed.

International and Portland entered into contracts for deed as vendees without consent of the mortgagee. Thus acceleration of the mortgage payment was within the right of the mortgagee pursuant to a due-on-sale clause. However, there is nothing in the record to indicate International or Portland's "procurement of the breach" was *intentional.*

According to the Minnesota Supreme Court, "liability for wrongful interference may be avoided by showing that the [respondent] was justified by a lawful object which he had a right to assert." *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W.2d 892, 897 (1965).

The Minnesota Supreme Court has stated:

Justification is the most common affirmative defense to an action for interference. It is employed to denote the presence of exceptional circumstances which show that no tort was in fact committed and lawful excuse which excludes actual or legal malice.

*Johnson v. Radde*, 293 Minn. 409, 196 N.W. 2d 478, 480 (1972).

▮ The standard for proving justification is reasonable conduct under all the

circumstances of the case. *Bennett,* 270 Minn. 525, 134 N.W.2d 892, 900 (1965). Under the facts, respondents' conduct was reasonable and absent evidence respondents' intent was to interfere with appellant's contract rights, we do not find tortious interference.

3. Doctrine of implied assumption.

Appellant urges this court to apply the doctrine of implied assumption of debt to the Portland and International contracts which did not contain language requiring the assumption of the obligation owed to appellant.

The Minnesota Supreme Court has acknowledged in *dicta* the existence of the doctrine in other jurisdictions. *See, e.g., Adrian State Bank v. Mulroy,* 172 Minn. 529, 215 N.W. 850 (1927). However, the doctrine has not been applied in Minnesota. Under the facts of this matter, absent an express provision assuming a debt owed under a contract for deed, we will not hold the vendee liable for that debt.

### DECISION

The trial court's judgment barring appellant's claims against respondent is affirmed.

Affirmed.