389 S.E.2d 734

**Harry MANN as Ancillary Executor of the Estate of Irene Mann**

v.

**Sheldon GOLUB; Howard Golub; Sidney Blau; Senior Towers Associates; Michael Zukerman; and Sidgo Realty Company.**

No. 18376.

Supreme Court of Appeals of West Virginia.

July 13, 1989.

On Rehearing Feb. 22, 1990.

**524**

John C. Skinner, Nichols & Skinner, Charles Town, for Harry Mann.

Anthony Labozzetta, New York City, for Golubs & Blau.

Charles F. Printz, Jr., Riche, Douglas and Shingleton, Martinsburg, for Senior Towers Assoc.

L. Alvin Hunt, Hunt and Wilson, Charleston, for Michael Zukerman.

PER CURIAM:

Harry Mann appeals from a final order of the Circuit Court of Berkeley County entered April 13, 1987. Mann asserts that the trial court erred: (1) by converting his remedy from one seeking money damages to specific performance; (2) by designating the jury as advisory; and (3) by refusing to allow him to testify as an expert witness. We agree and remand with directions.

In 1975, Mann approached Sidney Blau, Sheldon Golub, and Howard Golub, three of the appellees, about forming a partnership to build a senior citizen housing project in Martinsburg, West Virginia. Mann explained that there was a need for senior citizens housing in West Virginia, and that the West Virginia Housing Development Fund (the Fund) would help finance the project.[1]

On October 22, 1975,[2] the four men and Seymour Siegel formed a partnership called Senior Housing Associates.[3] The appellees were limited partners and the primary investors in Senior Housing Associates. Irene Mann, the appellant's wife, was a general partner,[4] as was Sidgo Realty, a partnership owned by the Golubs and Blau. Ultimately, the appellees owned 75% and Irene Mann owned 25% of Senior Housing Associates.

Mr. Mann was responsible for putting the deal together, and for his services he was to receive a salary of $673.00 a week. He purchased land, had it re-zoned, found a potential builder, and arranged financing. In May, 1978, on the day scheduled for closing, the contractor announced that he could not complete the project without additional funding. Hence, the closing was postponed. Later, the closing was again deferred.

Because of the delays, the Fund terminated Senior Housing Associates as sponsors of the Martinsburg project. The Fund feared that, unless the project progressed, HUD would withdraw the federal money from West Virginia and allocate it elsewhere. Eventually, the Fund agreed to restore Senior Housing Associates' sponsorship under certain conditions; primarily, that Irene Mann be replaced as a general partner. With Ms. Mann as a general partner, the Fund believed it impossible to close the construction loan. A new partner, J. Christopher Enterprises, Inc., owned by John Ferchill, replaced Irene Mann as general partner. This new investment group was called Senior Towers Associates.

Harry Mann prepared a letter stating the consideration for and conditions under

---

1. The West Virginia Housing Development Fund provides the loans which are guaranteed by the U.S. Department of Housing and Urban Development (HUD).

2. The record is unclear as to when the partnership was formed. The partnership agreement is dated October 22, 1975; however, the appellants' brief states that the partnership was formed in 1977.

3. Seymour Siegel resigned from the partnership in August, 1977, and is not a party to this proceeding.

4. It is undisputed that Irene Mann acted solely as a figurehead for her husband, the appellant. Mann could not serve as a general partner in the partnership because he had previously been a member of a partnership that had declared bankruptcy.

which his wife would resign.[5] She was to receive six promissory notes, each valued at $4,700.00 and due in 1982, and one-third of any residual distribution.[6] Because of the problems in closing the project, the appellees insisted on a provision that addressed the possibility that additional investments might be necessary to consummate the deal.[7] The agreement was signed by Sidney Blau, Sheldon Golub, Howard Golub, Sidgo Realty, Inc., and Senior Towers Associates by Sidgo Realty, Inc. Irene Mann then resigned as general partner.

The construction loan closing finally took place in Charleston, West Virginia, in November, 1978. On November 20, 1978, the appellees wrote Attorney Zukerman and advised him that a dispute had arisen with Mann; consequently, they instructed Zukerman to hold the notes in escrow rather than distribute them immediately to Mann. Despite the clause in the agreement "... that if there are any unusual demands by any of the participating parties at the closing, this letter is subject to renegotiation *prior* to the closing," Mann testified that he was not approached by the appellees before the closing about renegotiation of the contract. The appellees do not dispute this testimony; however, they contend that the withholding of the notes was justified because they were required to invest additional money at the closing. Immediately thereafter, the Golubs and Blau resigned from the partnership.

In 1980, the appellant, as fiduciary for his wife's estate,[8] filed this suit in Berkeley County, West Virginia. The complaint alleged breach of contract and sought money damages. The case was tried in March, 1987. At the close of all the evidence, the trial court ruled:

> We're in effect in a specific performance posture either as a result of lack of evidence or with rulings with respect to the court as matters of law. That's what we're left with; specific performance is an equitable proceeding. The jury therein is not absolute and is generally an advisory jury for the benefit of the court.
>
> With respect to any verdict of the jury, the verdict should be directed as to the issue of whether or not the plaintiffs, the plaintiff is entitled to the eight notes or the proceeds thereof or whether the defendants are entitled to the eight notes or the proceeds thereof.[9]

The jury returned a verdict granting the appellant six of the eight notes. The trial court accepted this verdict and entered an order dated April 13, 1987.

Initially, we observe that the appellant filed this action as a breach of contract and sought not specific performance, but money damages. Although the case was pled and tried as an action for damages, at the close of all the evidence the trial court *sua sponte* ruled the case to be one for specific performance and allowed the jury only to advise as to who should have physical possession of the promissory notes.

5. The November 9, 1978, letter provided, in pertinent part:

Dear Mr. Zukerman:

You are hereby authorized to release to Irene Mann after the closing with HUD of Senior Towers of the construction loan, six (6) notes, each in the amount of $4,700.00 due in 1982.

Sidney Blau will hold in escrow two (2) notes each in the amount of $4,700.00 for any contingencies.

It is further agreed that Irene Mann or her assigns shall be entitled to ⅓ of any residual distribution which shall be made up to the undersigned including any payments of the wrap-around mortgage.

It is further understood that if there are any unusual demands by any of the participating parties at the closing, this letter is subject to renegotiation *prior* to the closing.

(Emphasis in original.) Mr. Zukerman was the partnership's attorney.

6. Although not defined in the partnership agreement or in the November 9, 1978, contract, Mann testified that residual distribution was "... all monies after the payment of the mortgage, interest, taxes and expenses of the project."

7. *See* footnote 5, *infra.*

8. Irene Mann died in March, 1979.

9. Moreover, the trial court directed a verdict for Senior Towers Associates. Because Senior Towers Associates was a party to the contract, it appears that the trial court erred. Neither party asserts that Senior Towers Associates is a necessary party to assure collection on the notes; thus, we do not deem this error to be reversible.

■ It is a well established principle of law that the injured party is entitled to select his remedy. As explained in 1 Am. Jur.2d, *Actions* § 31 (1962):

Contracts sometimes provide a remedy or remedies to which the parties may resort upon breach thereof. If the contract specifically provides that the remedies enumerated shall be the only course of settlement, a party to it is limited to the remedies mentioned. *Where, however, there is no limitation in the contract which makes the remedies enumerated therein exclusive, a party is entitled to the remedies thus specified, or he may at his election pursue any other remedy which the law affords.* Thus, the common law right to sue upon a written obligation is not affected by the remedies provided in a mortgage securing it, unless such right is excluded by the express terms of the mortgage or by necessary implication.

*Citing Fleming v. Fairmont & M.R. Co.,* 72 W.Va. 835, 79 S.E. 826 (1913). (Other citations omitted.) (Emphasis added.) [10]

■ Implicit in a party's right to choose the remedy he wishes to pursue is a prohibition against the trial court's changing the chosen remedy. In this case, there was never any question that the appellant sought money damages and not specific performance. After all the evidence had been presented, the trial court announced that the evidence presented allowed only for the remedy of specific performance. It is not within the trial court's province to dictate what remedy a party must seek.[11] If a trial court finds that the evidence is legally insufficient to sustain the relief requested, the trial court should dismiss the action pursuant to Rule 41(a)(2) or direct a verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure.

■ The appellant argues that by converting the remedy from money damages to specific performance, the trial court denied the appellant his constitutional right to a jury trial. The appellant is correct that art. III, § 13 of the West Virginia Constitution [12] gives an absolute right to a jury trial in actions at law when the matter in controversy exceeds twenty dollars. *Matheny v. Greider,* 115 W.Va. 763, 177 S.E. 769 (1934). Indeed, we held in syllabus point 2 of *Matheny v. Greider, supra:*

---

10. *E.g. Johnson v. National Exchange Bank of Wheeling,* 124 W.Va. 157, 19 S.E.2d 441 (1942) (at the election of the injured party, the tort involved in the conversion of one's property can be waived, and indebitatus assumpsit relied upon for recovery); *Inter–Ocean Casualty Co. v. Leccony Smokeless Fuel Co.,* 123 W.Va. 541, 17 S.E.2d 51 (1941) (a person wronged by conversion of money or property, may waive the tort and recover on contract); *Eads v. Marks,* 39 Cal.2d 807, 249 P.2d 257 (1952) (contractual negligence ordinarily gives rise to an action either on contract or in tort, and the injured party may at his election waive the tort and sue on contract); *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731, 155 S.E.2d 819 (1967) (a party is entitled to elect his remedy); *Community Ins. Agency, Inc. v. Kemper,* 426 N.W.2d 471 (Minn. App.1988) (a vendor may elect cancellation of a contract or sue for general damages when a vendee defaults under a contract for deed); *J.M. Hamilton Co. v. Battson,* 99 Mont. 583, 44 P.2d 1064 (1935) (a party is entitled to pursue any remedy the law affords); *State Mut. Cyclone Ins. Co. v. O & A Electric Co-op.,* 5 Mich.App. 452, 146 N.W.2d 823 (1966), *rev'd on other grounds,* 381 Mich. 318, 161 N.W.2d 573 (1968) (election of a remedy is up to the injured party and his measure of damages depends on the remedy he elects); *Bishop v. Associated Transp., Inc.,* 46 Tenn.App. 664, 332 S.W.2d 696 (1959) (where a breach of covenant in a lease also constitutes a tort, the lessor may elect to bring his action in contract rather than in tort).

11. Even if the trial court's action were permissible, it would have erred by converting an adequate legal remedy to an equitable one. It is well established that a party cannot seek specific performance if he has an adequate remedy at law. *Manning v. Bleifus,* 166 W.Va. 131, 272 S.E.2d 821 (1980); *Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687 (1979); *see generally,* 17 Michies Jurisprudence, Specific Performance § 5 (1979 and supp.). Our discussion of the appellant's right to choose his remedy does not detract from this rule. In this case, appellant's counsel could have confidently advised his client that specific performance was unavailable. Hence, the appellant's choice of damages as his remedy is hardly surprising.

12. Article III, § 13 of W.Va. Const. provides, in pertinent part:

In suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved . . .

When a trial by jury has been demanded in an action involving more than $20.00, the impaneling of a jury to try the issue is a jurisdictional requirement, and a judgment rendered without complying with it is void.

*E.g., State ex rel. W.Va. Truck Stops v. McHugh,* 160 W.Va. 294, 233 S.E.2d 729 (1977); *Stephenson v. Ashburn,* 137 W.Va. 141, 70 S.E.2d 585 (1952).

 In the instant case, the appellant did have a jury trial[13] on the issue of liability. By awarding the six promissory notes to the appellant, the jury necessarily determined that the appellees breached the contract. We will not disturb this finding. The only issue which needs to be resolved is to calculate the current value of the notes.[14] Each of the notes was for the face value of $4,700 and provided interest at the rate of 8–1/2% per annum until the due date of the note, January 15, 1982. An interest rate of 8–1/2% per annum should be used to calculate the value of the notes from the date of issue until the due date. At this point, because the damages are liquidated, W.Va. Code 56–6–31 (1981),[15] becomes applicable and interest on the entire amount of principal and accumulated interest, as of January 15, 1982, shall then be determined. From January 15, 1982, until the judgment is paid, the interest shall be calculated at 10% per annum.

For the reasons stated herein, this proceeding is remanded to the Circuit Court of Berkeley County with instructions to calculate the value of the six promissory notes.[16]

Remanded with directions.

## ON REHEARING

On August 14, 1989, Harry Mann petitioned this Court for a rehearing. Mr. Mann contends that the trial court committed reversible error when it granted Senior Towers Associates' motion for a directed verdict.* Mr. Mann asserts that he will not be able to collect his judgment unless Senior Towers Associates is a party to the proceeding.

In an order dated October 27, 1989, we granted Mr. Mann's petition and directed both parties to respond to the following issues: "(1) whether the trial court committed reversible error by directing a verdict in favor of Senior Towers Associates; and (2) whether one party who has erroneously been directed out of the case at the conclusion of all the evidence can still be bound on the judgment if it can be shown as a matter of law that such party's liability is the same as that of co-defendants who have been found liable by the jury."

 We find that the law is clear that a partner acting on behalf of the partnership binds the partnership, and, if such partner is found liable to a third party for such acts, then the partnership is also liable. *See* W.Va. Code, 47–8A–9(1) and –13 (1953). *See also Belmont County Nat'l Bank v.*

13. Though the trial court designated the jury as advisory, he sustained its factual findings. Because there is no conflict between the jury's "advice" and the court's judgment, that advice was the functional equivalent of a verdict.

14. The contract also states that "Irene Mann or her assign shall be entitled to ⅓ of any residual distribution...." The undisputed evidence was that there was no residual distribution; thus, the trial court properly refused to allow this aspect of damages to go to the jury.

15. West Virginia Code § 56–6–31 (1981) provides:

Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or

any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

16. Because we are remanding this case solely to determine the value of the promissory notes, we need not address whether the trial court erred in refusing to allow Mann to testify as an expert witness.

* *See* note 9, *supra.*

*Onyx Coal Co.,* 177 W.Va. 41, 43 n. 2, 350 S.E. 552, 554 n. 2 (1986); *Pruitt v. Fetty,* 148 W.Va. 275, 134 S.E.2d 713 (1964). *See generally* Rowley, *The Law of Partnership* § 9.0(3) (2d ed. 1960); 59A Am.Jur.2d, *Partnership* § 647 (1987 & Supp.1989).

■ Here, the facts are not in dispute. The partnership agreement provides that the signature of a general partner on a contract is binding on the partnership. The contract between Mr. Mann and the appellees was signed by Sidgo Realty Company, a general partner. Moreover, it is clear that the contract was executed for the benefit of the partnership. Finally, neither party asserts that the general partner acted outside of the scope of its authority. In light of the foregoing, we find that Senior Towers Associates was a party to the contract and would be liable for breach of the contract as a matter of law once liability was established against a partner.

The partnership, Senior Towers Associates, was directed out of the case at the close of all the evidence. This was done after the trial court converted Mr. Mann's chosen remedy of damages to a request for specific performance, i.e., who was entitled to possession of the promissory notes. The trial court found that since the partnership did not have the notes in its possession, the remedy of specific performance was unavailable against it.

In the foregoing opinion, we found this action on the part of the trial court to be error. We held that the plaintiff was entitled to obtain damages equal to the value of the notes plus interest. With the partnership liability established as a matter of law, it was error for the trial court to dismiss the case.

In the past where an error of law has been made on a conclusive factual record, we have rectified the error by entering a proper judgment on appeal. For example, in *Estate of Bayliss by Bowles v. Lee,* 173 W.Va. 299, 315 S.E.2d 406 (1984), the trial court, based upon a stipulation of the facts, had rendered judgment against one of the parties. On appeal, we concluded that the trial court had committed several legal errors and that, based on the stipulated facts

and the law, the other party was entitled to judgment. We then entered judgment for the appellant and stated in Syllabus Point 5:

> " 'When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the evidence as the trial court should have made and rendered.' Syllabus Point 9, *Bluefield Supply Co. v. Frankel's Appliances, Inc.,* 149 W.Va. 622, 142 S.E.2d 898 (1965)."

*See also Huntington Dev. & Gas Co. v. Topping,* 115 W.Va. 364, 176 S.E. 424 (1934); *McKown v. Citizens' State Bank of Ripley,* 91 W.Va. 716, 114 S.E. 271 (1922).

Here the evidence regarding the partnership's liability was not in dispute. The only reason the partnership was dismissed from the case was the trial court's erroneous decision to convert the plaintiff's case from a suit for damages to one seeking recovery of the promissory notes.

In order to rectify the error in our initial opinion, we award the plaintiff damages equivalent to the value of the notes together with interest. For the reasons set out on this rehearing, we award a similar judgment against the partnership, Senior Towers Associates.